UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GREGORY GALBERTH,

                                  Plaintiff,                  9:15-cv-1443

v.                                                     (TJM/TWD)

J. BIELWIEZ, et al.,

                                  Defendants.
_____

APPEARANCES:                              OF COUNSEL:

GREGORY GALBERTH
03-A-0661
Plaintiff, *pro se*
Marcy Correctional Facility
P.O. Box 3600
Marcy, NY 13403

HON. BARBARA UNDERWOOD            KEITH J. STARLIN, ESQ.
New York State Attorney General        Asst. Attorney General
The Capitol
Albany, NY 12224
Attorney for Defendants

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION AND ORDER</u>

Presently before the Court is Defendants' motion to dismiss for failure to prosecute or, in the alternative, for an extension of time to conduct Plaintiff's deposition and move for summary judgment, and an order directing Plaintiff to appear for a deposition and an order that Plaintiff pay costs to Defendants for the money expended for the court stenographers on the two deposition dates Plaintiff refused to attend and for hotel and transport costs incurred when

defense counsel travel to Five Points Correctional Facility ("Five Points") from Albany, New York, where Plaintiff was housed, to conduct Plaintiff's Court Ordered deposition on June 13, 2018.  (Dkt. No. 103.)  Plaintiff opposes the motion.  (Dkt. Nos. 105, 106, 107, 108, 109, 110, 119, 121, 122.)  For the reasons that follow and in deference to Plaintiff's *pro se* status, the Court recommends that Defendants' motion to dismiss be denied without prejudice and that Plaintiff be afforded one final opportunity to appear for his deposition.

## I.    RELEVANT PROCEEDINGS TO DATE

Plaintiff commenced this action on December 7, 2015, by filing a *pro se* civil rights complaint, along with an application to proceed *in forma pauperis*.  (Dkt. Nos. 1, 3.)  On January 8, 2016, after a review of the complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A, the District Court ordered only Defendants Bielwiez, Smith, and Heath to respond to the following claims: (1) Eighth Amendment excessive force claim against Bielwiez; and (2) Eighth Amendment food tampering claims against Smith and Heath.  *Id*. at 26-27. Plaintiff's remaining claims were dismissed without prejudice.  *Id*.[1]  On March 16, 2016, Defendants filed their answer to the complaint.  (Dkt. No. 17.)

On March 17, 2016, the Court issued its initial Mandatory Pretrial Discovery and Scheduling Order.  (Dkt. No. 18.)  Relevant to the pending motion, the Court granted Defendants leave to take Plaintiff's deposition:

---

[1]  Specifically, the following claims were dismissed with leave to amend: (1) claims that Dr. Dolen, Nurse Boyde, Nurse Ryson, Jaclyn Green, and M. Groso were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment; (2) Eighth Amendment claims related to Plaintiff's conditions of confinement; (3) Eighth Amendment food tampering claim against Antonnick; (4) Eighth Amendment verbal harassment claims against Groso and Novck; (5) First Amendment retaliation claims against Green; (6) claims that Bielwiez authored a false misbehavior report in violation of Plaintiff's constitutional rights; and (7) conspiracy claims.  (Dkt. No. 8 at 26.)

> Defense counsel shall provide plaintiff[] with notice of the date of
> the deposition in the form provided in Rule 30(b)(1) and such
> notice shall be deemed sufficient if the notice is mailed to
> plaintiff[] at least fifteen (15) days prior to the scheduled date for
> the deposition.  The deposition may not commence until at least
> fifteen (15) days after defense counsel has filed a notice of
> compliance with [mandatory discovery] . . . .  **The failure of the
> plaintiff[] to attend, be sworn, and answer appropriate
> questions may result in sanctions, including dismissal of the
> action pursuant to Fed. R. Civ. P. 37.**

*Id*. at 4-5, emphasis added.  The pretrial deadlines were set as follows:  amended pleadings due

by July 17, 2016, joinder of parties due by July 17, 2016, discovery due by September 17, 2016,

and dispositive motions to be filed by November 16, 2016.  (Dkt. No. 18.)  On May 16, 2016,

Defendants timely served initial mandatory disclosure on Plaintiff.  (Dkt. No. 20.)  Plaintiff's

deposition was noticed for September 14, 2016.  (*See* Dkt. No. 103-2 at 1.)

Prior to the expiration of discovery, Plaintiff sought leave to file an amended complaint.

(Dkt. Nos. 10, 11, 21, 29, 30.)  On August 30, 2016, the Court issued the following Text Order:

> On January 10, 2016, February 10, 2016, and May 21, 2016,
> plaintiff filed letter motions advising the court that he intended to
> file an amended complaint.  (Dkt. Nos. 10, 11, 21).  Plaintiff did
> not annex or include any proposed pleading to those submissions.
> On March 16, 2016, defendants filed an answer to plaintiff's
> complaint.  (Dkt. No. 17).  On July 22, 2016, plaintiff filed an
> amended complaint.  (Dkt. No. 29).  On July 26, 2016, plaintiff
> filed a letter inquiring as to whether the court had received the
> proposed pleading.  (Dkt. No. 30).  Based upon a review of the
> docket and the procedural posture of the case, the Clerk of the
> Court is directed to amend the docket to rename Docket No. 30
> plaintiff's motion to amend the complaint.  The Clerk is further
> directed to annex Docket No. 29 as the proposed amended
> pleading.

(Dkt. No. 37.)  Defendants opposed Plaintiff's motion to amend for several reasons including

undue delay.  (Dkt. No. 40.)  On September 13, 2016, the pretrial deadlines were stayed pending

review of Plaintiff's motion to amend.  (Dkt. No. 42.)  By letter dated the same day, counsel for

Defendants explained to Plaintiff that his September 14, 2016, deposition would be rescheduled after the Court issued a decision on his motion to amend. (Dkt. No. 103-2 at 3.) Additionally, defense counsel's office telephoned the DOCCS facility where Plaintiff was then housed, informed appropriate DOCCS personnel that the September 14, 2016, deposition was cancelled and instructed DOCCS personnel to verbally inform Plaintiff of the adjournment. (Dkt. No. 103-1 at ¶ 45.)

In a Decision and Order filed on October 19, 2016, the District Court reviewed the sufficiency of the amended complaint in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A. (Dkt. No. 43.) Based upon that review, the following claims arising out of Plaintiff's confinement at Auburn Correctional Facility survived and required a response: (1) Eighth Amendment excessive force claim against Bielwiez; and (2) Eighth Amendment food tampering claims against Smith, Heath, Novak, Putnam, Smith, Antonnick, and Fagan. *Id*. at 16, 22.[2] Defendants filed answers to the amended complaint. (Dkt. Nos. 47, 57.)

Then, in January 2017, Plaintiff sought permission to submit a "supplemental amended complaint." (Dkt. No. 56.) Defendants filed a response in opposition to Plaintiff's letter motion. (Dkt. No. 58.) Plaintiff proceeded to file a series of "letters/submissions" in further support of his motion to supplement the amended complaint. (Dkt. Nos. 58, 59, 60.) On February 9, 2017, this Court denied Plaintiff's letter motion to further supplement his amended complaint for the reasons stated in Defendants' opposition submission. (Dkt. No. 62.) Specifically, it was noted

---

[2] Specifically, the following claims were dismissed pursuant to U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) Eighth Amendment medical indifference claims against Boyd, Ryerson, Doyle, Green, Groso, Dr. Kooi, Iqbal, and Walawender; (2) First Amendment retaliation claims; (3) conspiracy claims; and (4) claims related to Plaintiff's 2015 confinement at Wende Correctional Facility. (Dkt. No. 43 at 22.) Further, some claims were transferred to the Western District of New York for consideration. *Id*. at 21-22.

Plaintiff was previously granted an opportunity to amend his complaint (Dkt. No. 43), but certain claims were dismissed and not permitted in the amended complaint upon initial review (Dkt. No. 44). (Dkt. No. 62.)  Furthermore, it was determined that the claims Plaintiff proposed to reassert in the motion to supplement were the previously dismissed claims (*compare* Dkt. No. 13 *with* Dkt. No. 56) and, therefore, the proposed claims were futile. *Id.* Moreover, it was noted that Plaintiff's time to amend had long since expired and the previous request to amend was allowed although it was untimely filed. *Id.* The discovery deadline was reset to April 17, 2017, and then to June 16, 2017, following timely requests by Defendants. (Dkt. Nos. 63, 64, 65.)

On April 3, 2017, Plaintiff filed an appeal of this Court's February 9, 2017, Order denying Plaintiff's letter motion to further supplement the complaint. (Dkt. No. 66.) That same day, Plaintiff filed a motion for reconsideration of this Court February 9, 2017, Order. (Dkt. No. 67.) By Text Order filed April 10, 2017, the District Court notified the parties that Plaintiff's aforementioned appeal (Dkt. No. 66) would be held in abeyance until such time as Plaintiff's motion for reconsideration (Dkt. No. 67) was decided. (Dkt. No. 69.) On May 5, 2017, Defendants filed their response in opposition to Plaintiff's motion for reconsideration denying his letter motion to further supplement the amended complaint. (Dkt. No. 71.) Defendants noticed Plaintiff's deposition for June 13, 2017. (*See* Dkt. No. 103-2 at 4.)

Then, on May 15, 2017, Plaintiff filed a second motion for reconsideration of the same decision denying his letter motion to further supplement the amended complaint. (Dkt. No. 72.) The Court directed Defendants to respond to this additional motion for reconsideration. (Text Notice 05/16/2017.) On May 26, 2017, Defendants filed their response in opposition to Plaintiff's second motion for reconsideration. (Dkt. No. 73.)

By Text Order filed June 5, 2017, the June 16, 2017, discovery deadline was stayed while the Court addressed Plaintiff's multiple pending motions. (Dkt. No. 75.) Accordingly, by letter dated June 7, 2017, Plaintiff was advised that his scheduled June 13, 2017, deposition was being adjourned and would be rescheduled for a later date after the Court issued decisions on the pending motions. (Dkt. No. 103-2 at 7.) Additionally, defense counsel's office telephoned the DOCCS facility where Plaintiff was then housed, informed appropriate DOCCS personnel that the June 13, 2017, deposition was cancelled and instructed DOCCS personnel to verbally inform Plaintiff of the adjournment. (Dkt. No. 103-1 at ¶ 45.)

By Decision and Order filed June 30, 2017, Plaintiff's motions for reconsideration (Dkt. Nos. 67, 72) were denied. (Dkt. No. 76.) By Text Notice filed July 13, 2017, Defendants were directed to respond to Plaintiff's appeal of the February 9, 2017, Order (Dkt. No. 66). (Text Notice 07/13/2017.)

On July 19, 2017, Plaintiff filed another motion for reconsideration – this time of the October 19, 2016, Decision and Order (Dkt. No. 43). (Dkt. No. 77). Defendants were directed to respond to this motion. (Text Notice 07/19/2017.)

On July 27, 2017, Defendants filed their response in opposition to Plaintiff's appeal of this Court's decision denying Plaintiff's letter motion to further supplement his amended complaint (Dkt. No. 66). (Dkt. No. 78.) On August 3, 2017, Plaintiff filed yet another motion, which was interpreted by the Court as seeking to supplement his appeal (Dkt. No. 66). (Dkt. No. 79). On August 4, 2017, Plaintiff filed a reply in further support of his appeal (Dkt. No. 66). (Dkt. No. 80.) Also on August 4, 2017, Defendants filed their response in opposition to Plaintiff's motion for reconsideration of this Court's June 30, 2017, Decision and Order (Dkt. No. 76) denying Plaintiff's motions for reconsideration (Dkt. Nos. 67, 67) of the February 9,

2017, Order (Dkt. No. 62) denying Plaintiff's letter motion to further supplement his amended complaint.  (Dkt. No. 81.)

On August 21, 2017, Defendants filed their response in opposition to Plaintiff's motion to supplement (Dkt. No. 79) his appeal (Dkt. No. 66).  (Dkt. No. 82).  On August 31, 2017, Plaintiff filed his reply in further support of his motion to supplement.  (Dkt. No. 83.)  On September 29, 2017, the Court issued a Decision and Order denying Plaintiff's motion for reconsideration (Dkt. No. 77) of the Court's October 19, 2016, Decision and Order (Dkt. No. 43).  (Dkt. No. 84.)

On October 30, 2017, Plaintiff filed yet another motion for reconsideration – this one seeking reconsideration of the Court's September 29, 2017, Decision and Order (Dkt. No. 84) denying his motion for reconsideration (Dkt. No. 77).  (Dkt. No. 85).  On November 9, 2017, Defendants filed their response in opposition to Plaintiff's motion for reconsideration (Dkt. No. 85). (Dkt. No. 86.)  Plaintiff filed his reply on November 17, 2017.  (Dkt. No. 87.)

On November 30, 2017, the District Court issued a Decision and Order (1) dismissing Plaintiff's appeal of the February 9, 2017, Order that denied his motion to further supplement his amended complaint (Dkt. No. 66) and (2) denying Plaintiff's motion for reconsideration (Dkt. No. 85).  (Dkt. No. 88.)  Notably, Senior U.S. District Judge McAvoy issued the following warning:

> Here, the Court is also compelled to issue Plaintiff a warning. Plaintiff has repeatedly raised claims of constitutionally deficient medical treatment.  The Court has repeatedly found that Plaintiff's claims in this respect are inadequate and must be dismissed. Instead of moving forward to discovery on those claims which the Court has determined to remain in the case, Plaintiff has repeatedly filed documents seeking review of the Courts' decision dismissing his deliberate-indifference claims.  Plaintiff has offered no new arguments and the evidence Plaintiff has provided does nothing to advance his claims, even if the Court were to consider that evidence new for the purpose of Plaintiff's motions.  Plaintiff's conduct has come to border on the frivolous and vexatious.  Even

though he is proceeding *pro se*, the Court will not tolerate conduct that refuses to accept the authority of the Court to make final decisions regarding which claims remain in the case (pending appeal, of course). Plaintiff's arguments are becoming frivolous – he has sought reconsideration of a decision denying his motion for reconsideration, after all. Plaintiff must now recognize that the Court has evaluated the [ ] Amended Complaint and determined that only some claims should proceed to discovery. Not all of the claims that Plaintiff sought to present to the Court remain in the Amended Complaint, despite Plaintiff's repeated attempts to revive those claims. An additional motion for reconsideration or additional filings containing "evidence" of improper medical care will do nothing to advance the claims that remain in the case. **Plaintiff is hereby cautioned that the Court may consider any filings that attempt to re-litigate these issues as conduct in contempt of Court. Filing such documents could cause the Court to impose sanctions on the Plaintiff for contempt, up to and including dismissal of the entire case.**

*Id*. at 8-9, emphasis added.

By Text Order filed December 6, 2017, the pretrial deadlines were reset as follows: all discovery due by February 28, 2018; discovery motions due by March 7, 2018; and dispositive motions due by April 13, 2018. (Dkt. No. 89.) By Text Order filed February 8, 2018, the Court granted Defendants' letter motion requesting an extension of the discovery and dispositive motion deadlines and setting the deadlines as follows: discovery due by May 4, 2018, and dispositive motions to be filed by July 13, 2018. (Dkt. Nos. 90, 90.) The Court noted no further extensions absent extraordinary cause would be granted. (Dkt. No. 90.)

On April 17, 2018, Defendants served Plaintiff with a notice of deposition, noticing his deposition for May 3, 2018, at 10:30 a.m. at Five Points, where Plaintiff was housed, by stenographic means and via video teleconference. (Dkt. No. 103-1 at ¶ 46.) A true and complete copy of that Notice of Deposition, and the Declaration of Service are attached as Exhibit B to Defendants' pending motion to dismiss. (Dkt. No. 103-3.)

On May 3, 2018, a court reporter retained by defense counsel arrived at Five Points and defense counsel appeared via teleconference from Albany, New York to take Plaintiff's deposition. (Dkt. No. 103-1 at ¶ 48.) After setting up to take Plaintiff's deposition on that date, defense counsel was informed by DOCCS staff at Five Points that Plaintiff refused to leave his cell and would not attend the deposition. *Id.* Specifically, Corrections Officer ("C.O.") Matthew Glimpse testified under oath that he attempted to get Plaintiff to come to his scheduled deposition but that Plaintiff refused to come out of his cell for his teleconference deposition. (Dkt. No. 103-4.) The Office of Attorney General incurred $77.80 in court reporter fees because of Plaintiff's failure to appear at the May 3, 2018, deposition. (Dkt. No. 103-14.)

Thereafter, by letter dated May 3, 2018, defense counsel informed the Court that Plaintiff had refused to attend his deposition scheduled for earlier that same day and requested an extension of the discovery schedule in order to again attempt to depose Plaintiff. (Dkt. No. 92.) On May 4, 2018, the Court granted Defendants' letter motion to extend discovery because Plaintiff refused to appear for his deposition. (Dkt. No. 93.) Further, it was ordered that Defendants' counsel was to reschedule Plaintiff's deposition and provide timely and proper notice of the rescheduled deposition to Plaintiff "**who shall appear at the deposition**." *Id.*, emphasis added. The May 4, 2018, Text Order further advised:

> **Plaintiff's failure to appear for his deposition and answer proper deposition questions may result in sanctions including but not limited to dismissal of the action for failure to prosecute and failure to follow a court order.**

*Id.*, emphasis added.

Also on May 4, 2018, the Court received a letter from Plaintiff dated May 1, 2018, asking for, among other things, "an extension of time due to plaintiff Mr. Galberth has a serious head

cold . . . . . . And dose not feel well." (Dkt. No. 94 at 1-2, unaltered text.) On May 7, 2018, the

Court Ordered:

> **Plaintiff must go forward with his deposition as rescheduled per Dkt. No. 93. Failure to appear and answer proper deposition questions may result in sanctions including but not limited to dismissal of the action for failure to prosecute and failure to follow court orders and directives.**

(Dkt. No. 95, emphasis added).

On May 29, 2018, Defendants served Plaintiff with a notice of deposition, which noticed

his deposition for June 13, 2018, at 10:00 a.m. at Five Points. (Dkt. No. 103-1 at ¶ 56.) A true

and complete copy of that Notice of Deposition, and the Declaration of Service are attached as

Exhibit D to Defendants' pending motion to dismiss. (Dkt. No. 103-5.) Because Plaintiff

refused to come out of his cell to appear for his deposition to be conducted via video

teleconference on May 3, 2018, defense counsel traveled from Albany, New York to Five Points

to conduct the deposition in person. (Dkt. No. 103-1 at ¶ 58.[3])

On June 13, 2013, defense counsel and a court reporter retained by Defendants timely

appeared at Five Points to take Plaintiff's deposition. (Dkt. No. 103-1 at ¶ 59.) According to

Defendants, defense counsel was informed by DOCCS staff that Plaintiff was refusing to leave

his cell and would not come to the deposition. *Id.* After being informed by DOCCS personnel at

Five Points that Plaintiff was once again refusing to come out of his cell for his deposition on

June 13, 2018, defense counsel immediately asked to speak to the DOCCS officer who had

attempted to escort Plaintiff to the deposition, and it was arranged for that officer to leave his

---

[3]  Defense counsel left Albany the evening of June 12, 2018, stayed overnight at a hotel near Five Points, and timely appeared at Five Points to depose Plaintiff on June 13, 2018, at 10 a.m., incurring $77.80 in court reporter fees and $256.63 in travel expenses. (Dkt. No. 103-1 at ¶¶ 58, 99.)

post and come speak with defense counsel. *Id*. at ¶ 60. Specifically, C.O. John Wade testified under oath that Plaintiff refused to attend his deposition because he was not feeling well. (Dkt. No. 103-6.)

By letter dated June 14, 2018, defense counsel informed the Court that despite the Court's repeated warnings not to do so, Plaintiff had refused to attend his deposition scheduled for June 13, 2018. (Dkt. No. 96.) Defendants noted they intended to make a motion to dismiss this action for lack of prosecution. (Dkt. No. 96.) Defendants requested to stay the discovery and dispositive motion deadline due to Plaintiff's failure to again appear for a deposition as ordered. *Id*.

Then, on June 18, 2018, despite Judge McAvoy's explicit warning, the Court received a filing from Plaintiff requesting, among other things, to "renew the entire medical claim." (Dkt. No. 97 at 4.) That submission also stated: "Plaintiff is informing all courts due to mental and physical illness he can no longer litigate these case." *Id*. at 4. On June 22, 2018, Plaintiff filed another letter with the Court, advising, among other things, that he had been "suffering with a sinus infection that's getting worst." (Dkt. No. 99 at 2, unaltered text.) Plaintiff further indicated that he "can no longer litigate due to a consistent sinus infection that leves in pain and head brain pain." *Id*. at 3, unaltered text. On June 28, 2018, Plaintiff filed another submission, repeating that he has been physically and mentally ill for years with vibrations in his head, head pain, numbness in his brain, "in head flashing lights," ringing in his ears and memory loss, along with sinus pressure and sinus pain. (Dkt. No. 101 at 1-3.) Plaintiff again stated that he "wish to renew the entire medical claim." *Id*. at 3. Additionally, he stated, "Plaintiff is informing all courts due to mental and physical illness he can no longer litigate these case" and sought appointment of counsel. *Id*.

By Decision and Order filed July 3, 2018, this Court denied Plaintiff's motion to supplement his amended complaint to renew all of his previously asserted and dismissed Eighth Amendment indifference claims and denied his request for appointment of counsel. (Dkt. No. 101.)

On July 20, 2018, Defendants filed the pending motion to dismiss for failure to prosecute. (Dkt. No. 103.) Plaintiff opposes the motion. (Dkt. Nos. 105, 106, 107, 108, 109, 110, 119, 121, 122.[4]) Defendants have submitted a reply. (Dkt. No. 113.) The motion is fully briefed. (*See* Dkt. Nos. 123, 131.[5])

## II.    DISCUSSION

"United States Courts are vested with broad discretion to impose sanctions for non-compliance with court orders, and those sanctions can include the severe sanction of dismissing a case." *Tylicki v. Ryan*, 244 F.R.D. 146, 147 (N.D.N.Y. 2006) (citing *Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, No. 01 Civ. 6600(RLC), 2005 WL 3370542, at *1 (S.D.N.Y. Dec. 12, 2005)1 ("Moreover, the court has the inherent authority to dismiss a case when a party disobeys any of its orders.")).

---

[4]  To the extent Plaintiff raises new issues and/or complaints about his conditions of confinement in his opposition submissions, as explained in the Court's orders, he should file grievances at the facility level, and these new complaints and/or requests are not part of the present action and will not be considered by the Court. (*See* Dkt. No. 131.)

[5]  Plaintiff's submissions received by the Court on August 15, 2018, and August 29, 2018, were stricken from the record. (*See* Dkt. No. 115.) Further, to the extent Plaintiff's submissions received by the Court on November 2, 2018, and November 19, 2018, were submitted in opposition to the pending motion to dismiss (Dkt. Nos. 127, 128, 129) the submissions have not been considered by the Court because the motion is fully briefed. (*See* Dkt. No. 131.) Therefore, for the same reason, Plaintiff's letter motion (Dkt. No. 132) has not been considered by the Court and is hereby stricken from the docket. (*See* Dkt. No. 123.)

Furthermore, Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute the case, or to comply with the procedural rules or orders of the court.  Fed. R. Civ. P. 41(b); *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001).  This power to dismiss may be exercised when necessary to achieve orderly and expeditious disposition of cases.  *See Freeman v. Lundrigan*, No. 95-CV-1190 (RSP/RWS), 1996 WL 481534, at *1 (N.D.N.Y. Aug. 22, 1996).

In determining whether such dismissal is appropriate, the court should consider (1) the duration of the delay occasioned by the plaintiff's conduct, (2) whether the plaintiff has received notice that further delay would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) the plaintiff's right to due process, and (5) the efficacy of lesser sanctions.  *Lucas v. Miller*, 84 F.3d 532, 535 (2d Cir. 1996); *Davis v. Citibank, N.A.*, 607 F. App'x 93, 94 (2d Cir. 2015).  No one factor is dispositive.  *See Martens v. Thomann*, 273 F.3d 159, 181 (2d Cir. 2001).  However, with regards to *pro se* litigants, Rule 41(b) dismissal "remains a harsh remedy to be utilized only in extreme circumstances," and *pro se* plaintiffs "should be granted special leniency regarding procedural matters."  *LeSane*, 239 F.3d at 209 (citation omitted).

Considering the first factor and as discussed in the November 30, 2017, Decision and Order (Dkt. No. 88), instead of moving forward to discovery on those claims which the Court has determined to remain in the case, Plaintiff has repeatedly filed documents seeking review of the Courts' decision dismissing his deliberate-indifference claims.  As a result, Plaintiff's deposition originally scheduled to take place on September 13, 2016, and then on June 13, 2017, were adjourned.

Moreover, Plaintiff has now twice failed to appear for his deposition, one of which was Court Ordered. (Dkt. Nos. 103-4; 93, 95.) On each occasion, a DOCCS officer testified under oath that Plaintiff refused to leave his cell to attend the deposition. (Dkt. Nos. 103-4; 103-6.) The Office of Attorney General incurred $77.80 in fees associated with the May 3, 2018, deposition and $334.43 in fees and expenses associated with the June 13, 2018, deposition. (Dkt. Nos. 103-14, 103-15, 103-16.)

To be sure, Plaintiff has filed a series of submissions in apparent opposition to Defendants' motion to dismiss. (Dkt. Nos. 105, 106, 107, 108, 109, 110, 119, 121, 122.) Unfortunately, almost all of Plaintiff's filings are irrelevant. Plaintiff seems to claim he that his sinus infection and head cold left him apparently too ill to appear for the properly noticed deposition on May 3, 2018. (Dkt. No. 108.) However, as noted by Defendants in their reply brief, Plaintiff was apparently well enough to attend out of cell programing on the morning of May 3, 2018, before his scheduled 10:00 am deposition, and also apparently well enough to compose letters in other civil matter pending in the Western District of New York. (*See* Dkt. No. 113 at 7-8.)

Regarding the June 13, 2018, deposition, Plaintiff has claimed in two unsworn submissions both dated August 1, 2018, that he did not "refuse" the "second" deposition, but rather was never "called" or "taken" to the deposition. (Dkt. Nos. 108 at 5; No. 109 at 5.) Specifically, he claims he "was never taken to his deposition here at Five Points the Second Time Around." (Dkt. No. 109 at 5.[6]) In contrast and as discussed above, defense counsel and

---

[6] Plaintiff also claims he said he would go to the videoconference but an unidentified officer never got him for the July 13, 2018, deposition. (Dkt. No. 109 at 5.) As noted by Defendants, only the May 3, 2018, deposition was to be conducted via videoconference and the second deposition was noticed for June 13, 2018, not July 13, 2018. (*See* Dkt. No. 113 at 8-9.)

non-party DOCCS personnel have submitted sworn testimony that Plaintiff refused to attend the June 13, 2018, deposition.

Based on the foregoing, the Court finds Plaintiff has failed to take meaningful action in this case. This action was commenced on December 7, 2015, yet Plaintiff has not been deposed. This factor thus weighs in favor of dismissal. In so finding, the Court is mindful that Plaintiff claims, albeit in an unsworn submission, that he did not refuse to attend the second deposition.

Regarding the second factor, "[t]he Second Circuit requires that the plaintiff receive adequate notice that the case could be dismissed due to inaction." *Folk v. Rademacher*, No. 00-CV-199S (WMS), 2005 WL 2205816, *4 (W.D.N.Y. Sept. 9, 2005) (citing *Martens v. Thomann*, 273 F.3d at 180-81); *see also Europacific Asset Mgmt. Corp. v. Tradescape, Corp.*, 233 F.R.D. 344, 353 (S.D.N.Y. 2005) ("A court's prior warning of dismissal, and subsequent inaction by a plaintiff, weighs in favor of dismissal."). As set forth above, Plaintiff has been adequately warned of the consequences of his failure to appear for a deposition and to follow a court order. (Dkt. Nos. 93, 95.) Accordingly, this factor favors dismissal of the action.

The third factor is also satisfied as further delay is likely to prejudice Defendants. This case has been pending for more than three years, the events giving rise to Plaintiff's claims allegedly occurred between five and six years ago, and Plaintiff has yet to be deposed. (Dkt. Nos. 1, 44.) Further delay may well affect the parties' ability to locate witnesses, and to preserve evidence. *See, e.g.*, *Georgiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) ("The passage of time always threatens difficulty as memories fade.").

Under the circumstances, the Court finds that the need to alleviate congestion on the Court's docket outweighs Plaintiff's right to receive a further chance to be heard in this case. It is the need to monitor and manage cases such as this that delay the resolution of other cases and

contribute to the Second Circuit's relatively long median time to disposition for such civil rights cases.

Finally, the Court has carefully considered sanctions less drastic than dismissal and finds them to be inadequate under the circumstances. For example, the Court is persuaded that issuing an order reprimanding Plaintiff for his conduct would be futile in light of his history of non-compliance. Further, because Plaintiff is proceeding *in forma pauperis*, issuing a monetary sanction, including attorney's fees and costs associated with the two failed depositions, would not be an effective remedy at this time.

After weighing the above factors with the special solicitude that must be granted to *pro se* litigants, it appears dismissal for failure to prosecute would be warranted. Nevertheless, while the Court will not continuance further dilatory tactics, it acknowledges that dismissing Plaintiff's complaint is an extreme sanction. Therefore, the Court recommends that Defendants' motion to dismiss for failure to prosecute be denied without prejudice.

Turing to the alternative relief sought by Defendants, the Court recommends (1) granting Defendants' request to extend the discovery and dispositive motions deadlines for the limited purpose of conducting Plaintiff's deposition and to move for summary judgment; (2) granting Defendants' request for an Order directing Plaintiff to appear for a deposition; and (3) denying Defendants' request that Plaintiff be ordered to pay the Office of the Attorney General $155.60 for the court reporter fees, and $256.63 for the hotel and transportation fees incurred as a result of Plaintiff's failure to appear for his deposition on May 3, 2018, and June 13, 2018, be denied without prejudice.

If the District Court adopts this Report-Recommendation, the discovery deadline will be extended by thirty (30) days for the limited purpose of conducting Plaintiff's deposition.[7] Defendants are directed to properly notice Plaintiff's deposition within thirty (30) days of the District Court's Order.  Defendants are further directed to file a status report notifying the Court of the date certain of Plaintiff's deposition within fourteen (14) days of the District Court's Order and, within seven (7) days after such date, Defendants shall file a status report as to whether Plaintiff appeared for his scheduled deposition and/or whether any fees and costs were incurred should Plaintiff fail to appear.

In sum, the Court recommends that Plaintiff be afforded one final chance to fulfill his obligations and appear for his deposition.  **Plaintiff is warned that failure to appear at his deposition for any reason whatsoever may result in this Court *sua sponte* recommending dismissal of this action with prejudice and/or ordering monetary sanctions for failure to prosecute, failure to comply with a discovery order, and failure to comply with a court order.**  The Court will reset the discovery deadline once a decision is rendered on this Report-Recommendation.

**WHEREFORE**, it is hereby

**RECOMMENDED** that Defendants' motion to dismiss for lack of prosecution (Dkt. No. 103) be **DENIED WITHOUT PREJUDICE**; and it is further

**RECOMMENDED** that Defendants' request for alternative relief be **GRANTED IN PART and DENIED IN PART** as follows: (1) Defendants' request to extend the discovery and

---

[7]  Considering Plaintiff's professed physical and mental health issues, the Court suggests that Plaintiff's deposition again be noticed at his current housing facility and without unnecessary travel.  The deposition may be conducted via video teleconference should Defendants so choose.

dispositive motions deadlines for the limited purpose of conducting Plaintiff's deposition and to move for summary judgment be **GRANTED**; Defendants' request for an Order directing Plaintiff to appear for a deposition be **GRANTED**; and (3) Defendants' request that Plaintiff be ordered to pay the Office of the Attorney General $155.60 for the court reporter fees, and $256.63 for the hotel and transportation fees incurred as a result of Plaintiff's failure to appear for his deposition on May 3, 2018, and June 13, 2018, be **DENIED WITHOUT PREJUDICE**; and it is further

     **ORDERED** that Plaintiff's letter motion (Dkt. No. 132) is hereby **STRICKEN** from the docket as per Dkt. No. 123; and it is further

     **ORDERED** that if the District Court adopts this Report-Recommendation, Defendants are directed to (1) notify Plaintiff's deposition within thirty (30) days of the District Court's Order; (2) file a status report notifying the Court of the date certain of Plaintiff's deposition within fourteen (14) days of the District Court's Order; and (3) file a status within seven (7) days after such date as to whether Plaintiff appeared for his scheduled deposition and/or whether any fees and costs were incurred should Plaintiff fail to appear; and it is further

     **ORDERED** that that if the District Court adopts this Report-Recommendation, Plaintiff shall appear for the deposition; and it is further

     **ORDERED** that the Clerk serve a copy of this Decision and Order on Plaintiff, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: December 20, 2018
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[8]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2005 WL 3370542
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

INTERNET LAW LIBRARY, INC.
and Hunter M.A. Carr, Plaintiffs,
v.
SOUTHRIDGE CAPITAL
MANAGEMENT, LLC, et al., Defendants.
COOTES DRIVE, LLC.,
Defendant, Counterclaim-Plaintiff,
v.
INTERNET LAW LIBRARY, INC.,
Plaintiff, Counterclaim-Defendant.
Jack TOMPKINS, Kerwin Drouet, et al., Plaintiffs,
v.
SOUTHRIDGE CAPITAL
MANAGEMENT, et al., Defendants.

No. 01 Civ. 6600(RLC).
|
Dec. 12, 2005.

**Attorneys and Law Firms**

Koerner Silberberg & Weiner, LLP, New York, NY, for
Internet Law Library, Inc.

Maryann Peronti, of counsel.

Christian, Smith & Jewell, Houston, TX, for Internet Law
Library, Inc.

Gary M. Jewell, James W. Christian, of counsel.

Tate & Associates, Richmond, TX, for Internet Law
Library, Inc.

Richard L. Tate, James W. Christian, of counsel.

Dla Piper Rudnick Gray Cary U.S. LLP, New York, NY,
for Southridge Capital Management LLC, Cootes Drive
LLC, Stephen Hicks, Daniel Pickett, Christy Constabile,
David Sims, and Navigator Mangement Ltd.

Perrie M. Weiner, Caryn G. Mazin, Palmina M. Fava, of
counsel.

Kramer Levin Naftalis & Frankel LLP, New York, NY,
for Citco Group Limited.

Michael J. Dell, of counsel.

Law Offices of Michael S. Rosenblum, Los Angeles, CA,
for Southridge Capital Management LLC, Cootes Drive
LLC, Stephen Hicks, Daniel Pickett, Christy Constabile,
David Sims, and Navigator Management Ltd.

Michael S. Rosenblum, Amy M. Caves, of counsel.

Hanley Conroy Bierstein & Sheridan LLP, New York,
NY, for Kirwin Drouet, Jack Thompkins and Hunter
M.A. Carr.

Thomas I. Sheridan, III, of counsel.

Morrison & Foerster LLP, New York, NY, for Mark
Valentine.

Carl H. Loewenson, Jr., James E. Johnson, Joel C. Haims,
of counsel.

Gibbons, Del Deo, Dolan, Griffinger & Vecchione, PC,
New York, NY, for Thomson Kernaghan & Co, Ltd., and
TK Holdings, Inc.

Debra A. Clifford, of counsel.

OPINION

CARTER, J.

BACKGROUND

**\*1** This case is the result of several actions arising out
of a set of related financing transactions.[1] The court
consolidated these cases and named ITIS Holdings Inc.
("INL") (f/k/a ITIS Inc. and Internet Law Library),
Hunter Carr, Kerwin Drouet, and Jack Tompkins the
plaintiffs. *Internet Law Library, Inc. v. South Ridge Capital
Mgmt., LLC,* 208 F.R.D. 59 (S.D.N.Y.2002) (Carter,
J). Accordingly, Southridge Capital Management LLC,
Stephen Hicks, Daniel Pickett, Christy Constabile, David
Sims, Navigator Management Ltd., The Citco Group
Limited, Citco Trustees (Cayman) Limited and Cootes
Drive, LLC ("Cootes Drive") were named defendants and
Cootes Drive's claims against INL became counterclaims.
*Id.*

1 On January 12, 2001, INL, its Chief Executive Officer, Hunter M .A. Carr, and several shareholders filed suit against Southridge and a number of its representatives in the Southern District of Texas, among other things, fraud, misrepresentation of material facts, manipulation of INL's stock and breach of contract. *See Internet Law Library, Inc., et al. v. South Ridge Capital Mgmt., LLC et al,* 01 Civ. 660(RLC). Later, some additional shareholders of INL brought suit in the Southern District of Texas alleging much the same facts. *See Brewer, et al. v. South Ridge Capital Mgmt ., LLC, et al.,* 0202 Civ. 0138(RLC). Finally, Cootes Drive LLC, a Southridge affiliate, brought suit in this court against INL and several of its directors asserting claims for breach of contract and fraud. *See Cootes Drive, LLC v. Internet Law Library, Inc.,* 01 Civ. 0877(RLC).

Over the years the court has dealt with various issues, (*see e.g., Internet Law Library Inc. v. South Ridge Capital Mgmt., LLC,* 223 F.Supp.2d 474 (S.D.N.Y.2002) (Carter, J) (hereinafter *"Internet Law I"* )) with which familiarity is assumed. Most importantly, the court dismissed the plaintiffs' claims with prejudice in *Internet Law Library Inc. v. South Ridge Capital Mgmt ., LLC,* 2003 WL 21537782 (S.D.N.Y.2003) (Carter, J.) (hereinafter *Internet Law II* ).

In the instant matter, defendant Cootes Drive moves for partial summary judgment against INL on its third counterclaim for breach of contract for failure to redeem preferred stock pursuant to a stock purchase agreement. Defendant Cootes Drive also seeks partial summary judgment against INL on its fourth counterclaim for breach of contract for failure to honor a promissory note. The plaintiffs cross move to dismiss defendants' counterclaims pursuant to Rule 37(b)(2)(C), F.R. Civ. P., due to alleged abuses of discovery procedures, and move for the court to reconsider its judgment entered July 8, 2005 dismissing plaintiffs' claims with prejudice. Under separate covers, plaintiffs have twice moved to supplement the record of the aforementioned motions and defendants have moved to strike some of plaintiffs' supporting affidavits. We consolidate the former motions with the latter and resolve them all in this opinion. Because of the nature of the issues raised in plaintiffs' motions, we reach them first.

## DISCUSSION

## I PLAINTIFFS' MOTION FOR RECONSIDERATION

Plaintiffs' motion for reconsideration brought pursuant to U.S. Dist. Ct. S.D.N.Y. Local Civil Rule 6.3 is based on the court's possible oversight of two matters: (a) the *res judiciata* effect of its June 8, 2003 decision, specifically whether plaintiffs' affirmative defenses are barred, and (b) because Rule 37(b)(2)(C), Fed. R. Civ. P ("Rule 37") allegedly does not authorize sanctions. The parties have also made a request for the to court clarify these two issues, especially as they pertain to the order entered on July 8, 2003.

Under Rule 37, if a party "fails to obey an order entered under Rule 26(f) ... the court in which the action is pending may ... (C) ... strike [ ] out pleadings or parts thereof ... or dismiss[ ] the action or proceeding or any part thereof, or render judgment by default against the disobedient party." Plaintiffs' attempt to read the rule as only being applicable to parties who fail to participate in discovery is inapposite to the plain meaning of the statute. Moreover, the court has the inherent authority to dismiss a case when a party disobeys any of its orders. *See Chambers v. Nasco, Inc.,* 501 U.S. 32, 45 (1991). Plaintiffs flagrantly disregarded the discovery instructions of this court. As a result the court, acting well within its explicit and implicit authority, dismissed the plaintiffs' complaint. The court did not, however, dismiss the defendants' counterclaims or the plaintiffs' affirmative defenses to those counterclaims.

**\*2** Cootes Drive argues that because the claims in plaintiffs' dismissed complaint form the basis for their affirmative defenses, plaintiffs' affirmative defenses are now barred by claim preclusion. Under the doctrine of claim preclusion, once a judgment has been made on the merits, the parties are prohibited from bringing a second suit based upon the same claims. *Hough v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 757 F. Supp 283, 291 (S.D.N.Y.1991) (Conner, J.). Cootes Drive would be correct to assert that plaintiffs are precluded from bringing another complaint based upon the same claims found in their dismissed complaint. [2] However, that issue is not before the court. The court mindfully chose not to dismiss the plaintiffs' affirmative defenses. Thus, these affirmative defenses have not been adjudicated and there is no logic or fairness to treating them as if they have.

Case 9:15-cv-01443-TJM-TWD   Document 134   Filed 12/20/18   Page 22 of 34

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

[2]    A dismissal under Rule 37 is an adjudication on the merits. *See* Rule 41(b), F.R. Civ P.; *Nasser v. Isthmian Lines,* 331 F .2d 124 (2d Cir.1964).

We confirm that the court was within its authority in dismissing plaintiffs' complaint and that plaintiffs' affirmative defenses still stand. The court did not overlook these subjects. Accordingly, the motion for reconsideration is denied.

## II PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

While arguing that the court lacked the authority to dismiss their claims pursuant to Rule 37, the plaintiffs have the audacity to request that we now dismiss Cootes Drive's counterclaims pursuant to the same rule and for the same alleged conduct. Without delving into the sophistical reasoning that allows them to entertain these contradictory propositions, it bears repeating that plaintiffs flagrantly defied the court's order. The plaintiffs and not Cootes Drive disrespected the court. If Cootes Drive had done so, or if they ever do, the court would not hesitate to impose sanctions. The motion is denied.

## III PLAINTIFFS' MOTIONS TO SUPPLEMENT THE RECORD

On February 12, 2004 and on April 6, 2004, plaintiffs filed motions to supplement the record. The documents that are the subject of these motions were produced in connection with an action pending in Georgia. The documents themselves are the organizational documents and various agreements between companies affiliated with Cootes Drive. There are also letters and memoranda sent to and from these affiliated companies and the law firm of Dorsey & Whitney LLP, their transactional counsel. Plaintiffs assert that these documents demonstrate that the defendants operated their businesses in a tiered structure in order to limit liability. Even if true, this assertion does not make the documents relevant to Cootes Drive's claims of breach or plaintiffs' motions to dismiss and for reconsideration. Indeed, many of the documents predate the note and agreement by several years. Because plaintiffs have not sufficiently demonstrated the relevance of the documents to the motions that they seek to supplement, plaintiffs' two motions to supplement the record are denied.

## IV MOTIONS TO STRIKE PLAINTIFFS' AFFIDAVITS

**\*3**  Cootes Drive moves to strike portions of the affidavit of Hunter M. Carr, dated September 19, 2003 (the "Carr Affidavit") and the affidavit of Richard L. Tate, dated September 22, 2003 (the "First Tate Affidavit") based on evidentiary objections. The court finds that these affidavits comport with Rule 56(e). Cootes Drive's motions to strike the Carr Affidavit and the First Tate Affidavit are denied.

The Citco Group Limited and Citco Trustees (Cayman) Limited (the "Citco defendants") move to strike the Affidavit of Richard L. Tate, dated October 20, 2003 (the "Second Tate Affidavit"). The Second Tate Affidavit is submitted as a response to the Citco Defendants' motion for summary judgment. However, to the court's best knowledge or that of the Citco defendants, there never was such a motion. Submission of a reply to a nonexistent motion is clearly inappropriate; furthermore, even if the submission of the affidavit is appropriate, the contents are not. An attorney's affidavit is typically used to present documents to the court and should not be used as counsel's personal vehicle to lobby the court. *Universal Film Exchanges, Inc. v. Walter Reade, Inc.,* 37 F.R.D. 4, 5 (S.D.N.Y.1965) (Levet, J.). In the Second Tate Affidavit, Tate, attorney for the plaintiffs, engages in extensive argumentation and draws numerous conclusions of law. Tate further swears to several matters of which he could have no direct personal knowledge of as an attorney that came upon this matter after the fact. The Second Tate Affidavit is more akin to a memorandum of law than to an attorney's affidavit. The motion to strike the Second Tate Affidavit in its entirety is granted.

## V COOTES DRIVE'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT

In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc .,* 477 U.S. 242, 249 (1986). A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), F.R. Civ. P.

Case 9:15-cv-01443-TJM-TWD Document 134 Filed 12/20/18 Page 23 of 34
Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...
2005 WL 3370542

1. Counterclaim Three: The Convertible Preferred Stock Purchase Agreement

After several months of negotiations, on or about May 11, 2000, Cootes Drive [3] and INL entered into the Convertible Preferred Stock Agreement (the "agreement"). Under the agreement, INL agreed to sell Cootes Drive shares of INL's 5% Series A Convertible Preferred Stock, which could be redeemed for INL common stock at Cootes Drive's request. Cootes Drive's motion for summary judgment on their third counterclaim is based on the failure of INL to honor one of these redemption requests.

[3]      Plaintiffs allege that Cootes Drive was inserted into the agreement at the eleventh hour as a substitute for Southridge and is in fact little more than a "straw man" created to insulate Southridge from liability.

To prevail on a claim for breach of contract under New York law, a party must show: 1) the existence of an agreement between the parties; 2) adequate performance of the contract; 3) breach of the contract; and 4) damages resulting from the breach. [4] The parties admit that the agreement exists, Pls. Statement Pursuant to Local Rule 56.1 ("Pls.Statement") at ¶ 1, and that the defendants performed. *Id.* at ¶ 6. INL admits that they did not honor Cootes Drive's redemption request. *Id.* at ¶¶ 14-15. Finally, defendants are able to show damages based upon the position it would have had INL performed under the agreement. Defs. Reply Mem. at 3. Cootes Drive has therefore met the requirements of their claim for breach against INL.

[4]      *Internet Law I,* 223 F.Supp.2d at 490 *citing Harsco Corp.,* 91 F.3d at 348; *See also Bridgeway Corp. v. Citibank, N.A.,* 132 F.Supp.2d 297, 305 (S.D.N.Y.2001)* (Chin, J.).

**\*4** While INL does not contest that they failed to honor the redemption request, they defend their failure to redeem the stock on the grounds that defendants, among other things, [5] fraudulently induced them into entering the agreement and materially breached the agreement. As is the case here, "[o]ne who relies upon an affirmative defense to defeat an otherwise meritorious motion for summary judgment must adduce evidence which, viewed in the light most favorable to and drawing all reasonable inferences in favor of the non-moving party, would permit judgment for the non-moving party on the basis of that

defense." *Frankel v. ICD Holdings S.A.,* 930 F.Supp. 54, 65 (S.D.N.Y.1996)* (Kaplan, J.). The non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *SHL Imaging, Inc. v. Artisan House, Inc.* 117 F.Supp.2d 301, 304 (S.D.N.Y.2000)* (Pauley, J.). Within this framework the court will examine INL's defenses to Cootes Drive's counterclaims.

[5]      Plaintiff INL also raises a defense of "manipulation". This is not a recognized defense to breach of contract.

Plaintiffs contend that they relied upon a number of false statements made by the defendants outside of the agreement. Before deciding the underlying question of the merits of the fraudulent inducement claims, the court must first determine whether plaintiffs will be allowed to offer evidence pertaining to their claim. Under New York law, if a contract contains a merger clause, parol evidence is not admissible to "vary, or permit escape from the terms of an integrated contract." [6] However, a general merger clause will not preclude a party from introducing parol evidence that they were induced into entering a contract by means of fraud, [7] and a party may escape liability by establishing proof of such fraud. [8] The exception to this rule is that if the contract contains a disclaimer of certain representations, the relying party cannot claim that they were defrauded as to those specific representations. [9]

[6]      *Manufacturers Hanover Trust Co. v. Yanakas,* 7 F.3d 310, 315 (2d Cir1993) *citing Fogelson v. Rackfay Construction Co.,* 300 N.Y. 334, 340, 90 N.E.2d 881, 884 (1950)

[7]      *Sabo v. Delman,* 3 N.Y.2d 155, 161-62, 164 N.Y.S.2d 714, 717-19 (1957); *Bridger v. Goldsmith,* 143 N.Y. 424, 428, 38 N.E. 458, 459 (1894)* ("fraud [in the inducement] vitiates every transaction")

[8]      *See Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 320, 157 N.E.2d 597, 598, 184 N.Y.S.2d 599, 601 (1959)*(contract provided that "all understandings and agreements heretofore had between the parties hereto are merged in this contract ... neither party [is] relying upon any statement or representation not embodied in the is contract").

[9]      *Citibank v. Plapinger,* 66 N.Y.2d 90, 94, 495 N.Y.S.2d 309, 312 (1985)* (provision in multimillion dollar agreement stating that all guarantees are "absolute and unconditional" precluded defense of fraud)

Case 9:15-cv-01443-TJM-TWD   Document 134   Filed 12/20/18   Page 24 of 34

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

The agreement between the parties contains both a merger clause [10] and a disclaimer of reliance. [11] Plaintiffs defend against these facts by asserting that the disclaimer is general and not specific. [12] In New York, no particular words are needed to make a disclaimer specific. [13] However, a specific disclaimer must "contain explicit disclaimers of the particular representations that form the basis of the fraud in the inducement ... the touchstone is specificity." [14] The disclaimer in question appears at the end of warranties and representations section of the agreement and reiterates that no warranties or representations shall be made other than those in the immediately preceding section. [15] This is, by nature, a general disclaimer; it lacks the specificity to meet the standard the Second Circuit has applied under New York law. New York law requires more than a "generalized boilerplate exclusion [clause]," [16] a disclaimer must speak directly to the matter at issue in order to preclude a claim of fraud in the inducement. [17] The court therefore finds that plaintiffs are not barred from introducing evidence of fraud in the inducement.

[10] "The Transaction Documents ... contain the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters ..." agreement § 4.2.

[11] "The Company acknowledges and agrees that no Purchasor makes or has made any representations or warranties with respect to the transactions contemplated hereby other than those specifically set forth in this Section 2.2" agreement § 2.2.

[12] "[A] general merger clause is ineffective to exclude parol evidence to show fraud in inducing the contract ..." *Danann Realty* at 320.

[13] *Wells Fargo Bank Northwest, N.A. v. Taca Intern. Airlines, S.A,* 247 F.Supp.2d 352, 368 (S.D.N.Y.,2002) (Lynch, J.) *quoting Lucas v. Oxigene, Inc.,* No. 94 Civ. 1691, 1995 WL 520752 at *5 (S.D.N.Y.1995) (Mukasey, J.)

[14] *Yanakas,* 7 F.3d 310, 316 *citing Grumman Allied Industries, Inc. v. Rohr Industries, Inc.,* 748 F.2d 729 (2d Cir.1984)

[15] § 2.2 includes representations by the purchasers regarding their organization and authority to enter into the agreement, investment intent, "accredited

investor" status, financial experience, ability to bear risk of the investment, access to information and other securities related matters.

[16] *Yanakas,* 7 F.3d 310, 317.

[17] *DiFilippo v. Hidden Ponds Associates,* 146 A.D.2d 737, 738; 537 N.Y.S.2d 222, 224 (N.Y.A.D. 2 Dept.1989) ("[b]ecause the [disclaimer] provision does not specifically disclaim reliance on any oral representation concerning the particular matter as to which plaintiff now claims he was defrauded, it does not foreclose him from offering evidence of the defendants' oral representations to the contrary.")

**\*5** The court now examines the claims of fraud to determine if there is a genuine dispute as to a material fact. Under New York law, a claim of fraudulent inducement requires proof (1) that the defendants made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendants, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity, (8) to his injury. [18] Plaintiffs list nine misrepresentations that it claims the defendants made to them. Pls. Statement at ¶ 59. Although their claim has been plead with specificity, [19] plaintiffs have failed to prove reliance on each of the statements for one or more of the following reasons. Where the defendants' alleged misrepresentations are contradicted or subsumed by material in the agreement, for example, that INL's stock would be acquired for investment purposes and not for distribution or resale, we find that the plaintiffs' claims are unreasonable as a matter of law. [20] The court finds plaintiffs' reliance on other statements to be simply unreasonable. "Reliance means reasonable reliance." *M.H. Segan Ltd. Partnership v. Hasbro, Inc.* 924 F.Supp. 512, 526 (S.D.N.Y.1996) (Cote, J.) (internal quotations and citations omitted). After analysis of the material provided by the parties, the court concludes that alleged representations such as "[t]hey would not manipulate stock in order to depress its price", Pls. Statement at ¶ 59, are so important to the functioning of a publicly traded company that no reasonable businessperson would have relied on them without putting them in writing after first discussing them at length. [21] Other misrepresentations, for example, that other companies funded by defendants experienced increases in their stock prices, Pls. Statement at ¶ 59, would have been easily verifiable. [22] The remaining statements

are uncontraverted or without consequence. Holding, as we do, that INL cannot satisfy the reliance element of their affirmative defense of fraudulent inducement we need not look into the remaining elements of the claim. INL's affirmative defense of fraudulent inducement as to Cootes Drive is hereby struck insofar as it pertains to the third counterclaim.

18    *Computerized Radiological Servs. v. Syntex Corp.,* 786 F.2d 72, 76 (2d Cir.1986) *quoting Brown v. Lockwood,* 76 A.D.2d 721, 432 N.Y.S.2d 186, 193 (1980).

19    In the court's previous decision, the fraud claims were examined under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, passed pursuant to § 10(b). The court held that because the plaintiff satisfied the elements for pleading a claim under the statutes, they had satisfied the nearly identical common law fraud requirements as well. *Internet Law I,* 223 F.Supp.2d 489-90.

20    *See Brown v. E.F. Hutton Group, Inc.,* 991 F.2d 1020, 1031 (2d Cir.1993) (district court correct in granting summary judgment after holding reliance unreasonable as a matter of law where alleged misrepresentations were contradicted by offering materials); *Emergent Capital Inv. Management, LLC v. Stonepath Group, Inc.,* 343 F.3d 189, 196 (2d Cir.2003) (plaintiff's failure to insist that a representation be included in a stock purchase agreement "precludes as a matter of law a finding of reasonable reliance"); *Feinman v. Schulman Berlin & Davis,* 677 F.Supp. 168, 170-71 (S.D.N.Y.1988) (Kram, J.) (dismissal appropriate where plaintiffs relied on statements "directly contradicted by the clear language of the offering memorandum"); *M.H. Segan Ltd. Partnership v. Hasbro, Inc.,* 924 F.Supp. 512, 527 (S.D.N.Y.1996) (Cote, J.) (party failed to establish reasonable reliance as a matter of law where misrepresentations were "directly contradicted" by written waiver agreement).

21    "Sophisticated business entities, when put on notice of the existence of material facts which have not been documented, assume the business risk that the facts may not be as represented because a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament." 247 F.Supp.2d 352, 369 (internal quotations omitted) *quoting Lazard Freres & Co. v. Protective Life Ins.,* 108 F.3d 1531, 1543 (2d Cir.1997).

22    "Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." *Grumman Allied Industries, Inc. v. Rohr Industries, Inc.* 748 F.2d 729, 737 (2d Cir.1984).

The court held previously that plaintiffs have successfully pleaded claims to meet the elements of an action for breach of contract. *Internet Law I,* 223 F. Supp at 490. The court now searches the record to see if there is sufficient evidence to prove these allegations. What is in dispute is whether Cootes Drive's breach, namely, selling shares short in violation of the agreement, was material. 23 If Cootes Drive's breach was material, plaintiffs argue, plaintiffs were excused from performance. As discussed above, Cootes Drive has proven its claim and the burden is upon plaintiffs to produce evidence that would "permit judgment for the [plaintiffs] on the basis of [their] defense." 24

23    "Under New York law, for a breach of a contract to be material, it must go to the root of the agreement between the parties. A party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract." *Frank Felix Associates, Ltd. v. Austin Drugs, Inc.,* 111 F.3d 284, 289 (2d Cir.1997) (internal quotations and citations omitted); *Wechsler v. Hunt Health Systems, Ltd.,* 186 F.Supp.2d 402, 413 (S.D.N.Y.2002) ("Under New York law [materiality of a breach] is a question of law for the Court to decide.")

24    *Frankel v. ICD Holdings S.A.,* 930 F.Supp. 54 (S.D.N.Y.1996) (Kaplan, J.) (holding that custom crafted disclaimer language in notes negotiated between sophisticated parties waived a defense of fraud in the inducement)

**\*6** Plaintiffs make grand allegations but actually prove very little. Construing the facts in the light most favorable to them, but without taking any untoward leaps of faith, plaintiffs have shown that defendant Cootes Drive sold 64,346 shares "short" 25 prior to receiving a waiver 26 from INL that enabled them to sell shares in this manner. During the 93 trading days before the waiver, defendant Cootes Drive maintained short positions on only 7 days. Pls. Statement at ¶ 24. The shorted sales make up a very

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

Case 9:15-cv-01443-TJM-TWD    Document 134    Filed 12/20/18    Page 26 of 34

2005 WL 3370542

small minority of the shares traded by Cootes Drive and a minute percentage of the overall total shares traded during the period. The court finds that, in light of the peculiarities of this case, this small amount of trading is merely a technical violation of the agreement; it does not go to the root of the agreement between the parties and is therefore not is enough to constitute a material breach and excuse INL from performance. [27]

[25]        § 3.13 of the agreement defines short sales as a sale where there was not an equivalent offsetting long position including shares due under a notice of conversion.

[26]        Plaintiffs do not contest the authenticity of the waiver but allege the waiver was given as a result of the underlying fraudulent inducement. Holding, as we do, that plaintiffs' claims of fraudulent inducement are without merit, we find the parties validly entered into the waiver.

[27]        "The right of a party to enforce a contract will not be forfeited or lost by reason of technical, inadvertent, or unimportant omissions or defects." *Cablevision Systems Corp. v. Town of East Hampton,* 862 F.Supp. 875, 885 (E.D.N.Y.1994), *aff'd* 57 F.3d 1062 (2d Cir.1995) (unpublished table decision), *quoting Miller v. Benjamin,* 142 N.Y. 613, 617, 37 N.E. 631 (1894).

The one piece of evidence that plaintiffs produced which tends to mitigate in their favor are the trading records showing that Thomas Kernaghan, an agent and broker for Cootes Drive, was shorting INL stock. However, these trades begin well before the agreement and plaintiffs do not show that the trades were done at the behest of Cootes Drive. Plaintiffs have requested additional discovery to flesh out these particular weaknesses in their defense of breach. Plaintiffs have already been given ample time for discovery. In light of this and plaintiffs' conduct during such discovery, no additional discovery will be granted. [28]

[28]        *See Internet Law II,* 2003 WL 21537782 (S.D.N.Y.2003) (Carter, J.)

INL's defense of breach is hereby struck as it pertains to the third counterclaim. Plaintiffs have also included in their pleadings an everything-but-the-kitchen-sink list of affirmative defenses that they do not even attempt to support. [29] Like their affirmative defenses of fraud and breach, we find these defenses to be without merit as they pertain to Cootes Drive's Third Counterclaim. We hereby

award summary judgment in favor of Cootes Drive on their Third Counterclaim. INL is required to pay damages and interest to Cootes Drive for breach of the agreement.

[29]        Reply to Counterclaims at 17-19.

2. Counterclaim Four: The Promissory Note
Cootes Drive's fourth counterclaim for breach of contract is for failure to repay a promissory note. In New York, proof of a promissory note, demand and nonpayment establishes a prima facie case for recovery. [30] A prima facie case entitles the promisee to judgment as a matter of law. [31] In the instant matter, plaintiffs concede that "Cootes Drive agreed to loan INL $500,000 ... [as] memorialized by a promissory note dated December 5, 2000" (the "note"). Pls. Statement at ¶ 29-30. Plaintiffs further concede that Cootes Drive provided the funds; demanded payment on March 1, 2001; and that "[INL] has not paid the Note" *Id.* at 32-33. Based upon plaintiffs' admissions alone, Cootes Drive has squarely met the burden of proving a prima facie case.

[30]        *See First Federal Sav. Bank v. Tazzia,* 696 F.Supp. 904, 906 (S.D.N.Y.1988) (Sweet, J.); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Fremont,* 760 F.Supp. 334, 336 (S.D.N.Y.1991) (Stanton, J.); *Citicorp. Intern. Trading Co., Inc. v. Western Oil & Refining Co., Inc.,* 790 F.Supp 428 (S.D.N.Y.1992) (Sweet, J.).

[31]        *Gross v. Fruchter,* 230 A.D.2d 710, 711, 646 N.Y.S.2d 53, 54 (N.Y.A.D. 2 Dept.1996) (promisee established entitlement to judgment as a matter of law by producing note and demonstrating that maker failed to redeem when requested).

**\*7** Once the promisee has demonstrated a prima facie case for recovery on a note, in order to avoid judgment, it is up to the maker to produce evidence showing a triable issue fact establishing a bona fide defense. *Grasso v. John I. Shutts Agency, Inc.,* 517 N.Y.S.2d 113, 132 A.D.2d 768 (N.Y.App.Div.1987). To this end, mere conclusory allegations will not suffice; a genuine and substantial issue rebutting holder's entitlement to payment must be shown. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Fremont,* 760 F.Supp. 334, 336 (S.D.N.Y.1991) (Stanton, J.). Without being explicit, plaintiffs seem to posit the same defenses to the payment of the note as the agreement, specifically that the note is a result of underlying fraud and that the defendants breached the

Case 9:15-cv-01443-TJM-TWD    Document 134    Filed 12/20/18    Page 27 of 34

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

note in some manner. Although, plaintiffs' fraud defense is invalid for the reasons described above, it is worth noting that it would not be applicable to the note because the plaintiff specifically waived his right to protest payment of the note. Note § 6 ("[a]ll payments of principal and interest shall be made without setoff, deduction or counterclaim.") Under New York law, such a waiver among sophisticated parties is effective to overcome virtually any defense to enforcement. [32]

[32]    *Citicorp Intern. Trading Co., Inc.,* 790 F.Supp at 434; *Thornock v. Kinderhill Corp.,* 749 F.Supp. 513 (S.D.N.Y.1990)* (Sweet, J.) (granting summary judgment in favor of promisee despite maker's defense of fraudulent inducement because such defense was not based upon misrepresentations concerning terms or conditions of loan itself); *Bank of Suffolk County v. Kite,* 49 N.Y.2d 827, 427 N.Y.S.2d 782 (1980)* (Bank entitled to judgment on note despite alleged oral understanding that maker would not be liable where the unexpressed condition was inconsistent with the expressed terms of the note).

Plaintiffs offer no theories as to how Cootes Drive has breached the conditions of the note. Plaintiffs merely allege that after entering the agreement, their position with creditors had become so poor that they had no one else to turn to for money. Even assuming this is an attempt to contrive a non-frivolous economic duress defense, the court finds no merit in it. Plaintiffs were not "forced to agree to [the note] by means of a wrongful threat

precluding the exercise of his free will." [33]  INL's defenses to enforcement of the note fail. Summary judgment is awarded to Cootes Drive on their fourth counterclaim. INL must repay the principal and accrued interest on the note.

[33]    *Signet Corp. v. Interbank Financial Services, Inc.,* 755 F.Supp. 103, 105 (S.D.N.Y.1991)* (Eldelstein, J.) *quoting* *Austin Instrument, Inc. v. Loral Corp.,* 29 N.Y.2d 124, 130, 324 N.Y.S.2d 22, 25 (1971).

## CONCLUSION

Plaintiffs' request for the court to reconsider the judgment entered July 8, 2005 is DENIED. Plaintiffs' motion to dismiss Cootes Drive's counterclaims is DENIED. Both of plaintiffs' motions to supplement the record are DENIED. Cootes Drive's motions to strike the Carr Affidavit and First Tate Affidavit are DENIED. The Citco defendants' motion to strike the Second Tate Affidavit is GRANTED. Partial summary judgment in favor of Cootes Drive on its third and fourth counterclaims is GRANTED.

IT IS SO ORDERED

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 3370542

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:15-cv-01443-TJM-TWD    Document 134    Filed 12/20/18    Page 28 of 34

Freeman v. Lundrigan, Not Reported in F.Supp. (1996)
1996 WL 481534

1996 WL 481534
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Millicient FREEMAN, Plaintiff,

v.

Kevin LUNDRIGAN, C.O., Defendant.

No. 96–CV–1190 (RSP/RWS).
|
Aug. 22, 1996.

**Attorneys and Law Firms**

Millicient Freeman, Oriskany, NY, Pro se.

McLane and Smith, L.L.P., Utica, NY (Steven A. Smith, of counsel), for Defendant.

ORDER

POOLER, District Judge.

**\*1** By Order dated February 5, 1996 ("Order"), I approved the Order and Report–Recommendation of Magistrate Judge Ralph W. Smith, Jr., dated October 5, 1995, and dismissed this action as against Daniel Middaugh, Michael Durant, Todd Egger, Robert Stanton and Daryl Bourant. *See* Dkt. No. 11.

A copy of the Order was served on Freeman at her last known address by regular mail on February 6, 1996. On February 12, 1996, the Order was returned to the Court marked "No Longer at This Facility—Please Return to Sender." *See* Dkt. No. 12.

On June 19, 1996, Steven A. Smith, Esq., attorney for the defendant, filed an affidavit with the Court stating that he had attempted to serve a first set of interrogatories on Freeman at the address listed on the summons, and that it was returned to him by the Post Office marked "RTS" or return to sender. *See* Dkt. No. 14.

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute an action or comply with any order of the court. *Link v. Wabash Railroad County Independent School District,*

370 U.S. 626 (1962). This power to dismiss an action may be exercised when necessary to achieve orderly and expeditious disposition of cases. *See Rodriguez v. Walsh,* No. 92–Civ–3398, 1994 WL 9688, \*1 (S.D.N.Y. Jan. 14, 1994) (citations omitted).

Additionally, this Court specifically cautioned Freeman that her failure "to promptly notify the Clerk's Office of any change in her address ... [would] result in the dismissal of the instant action." *See* Dkt. No. 3 at 7.

Moreover, a plaintiff has the duty to inform the Court of any address changes. As I have stated:

> It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be reflected by those inquiries if made in writing.

*Dansby v. Albany Cty Corr. Facility,* No. 95–CV–1525, 1996 WL 172699, \*1 (N.D.N.Y. Apr. 10, 1996) (Pooler, J.) (quoting *Perkins v. King,* No. 84–3310, slip op. at 4 (5th Cir. May 19, 1985) (other citations omitted)); *see generally* Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York.

This matter cannot proceed without notification to the Court by Freeman of her current address. Therefore, it is hereby:

ORDERED, that this action is dismissed, *See* Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York, and it is further;

ORDERED, that the Clerk serve a copy of this Order on Freeman by regular mail at her last known address and on Steven A. Smith, Esq., attorney for the defendant.

**\*2** IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1996 WL 481534

---

                                      © 2018 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 2205816
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Wattie FOLK, Plaintiff,

v.

P. RADEMACHER, et al., Defendants.

No. 00-CV-199S.
|
Sept. 9, 2005.

**Attorneys and Law Firms**

Wattie Folk, Great Meadow Corr. Facility, Comstock, NY, pro se.

William Lonergan, New York State Attorney General's Office, Stephen F. Gawlik, Assistant Attorney General, Buffalo, NY, for Defendants.

DECISION AND ORDER

SKRETNY, J.

I. INTRODUCTION

**\*1** Plaintiff commenced this action under 42 U.S.C. § 1983 on March 3, 2000, by filing a Complaint in the United States District Court for the Western District of New York. Presently before this Court is a Motion to Dismiss filed by the remaining defendants in this case-P. Rademacher, Sgt. Stachewiez, Lt. Hendel, W.Kelley, Hartman, Fleming, Booker, Piasa and Sgt. Baker ("Defendants")-on September 2, 2004. Defendants bring their motion pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure. This is the third motion filed by Defendants on these grounds. For the reasons stated below, Defendants' motion is granted and this case is dismissed with prejudice.

II. BACKGROUND

This motion arises from a discovery ruling issued by the Honorable Hugh B. Scott, United States Magistrate Judge. On October 15, 2002, Defendants filed a Motion

to Compel Plaintiff to respond to their First Set of Interrogatories because Plaintiff's initial response had been inadequate. On May 27, 2003, Judge Scott granted Defendants' Motion to Compel and directed Plaintiff to file appropriate interrogatory responses within twenty days. Despite being granted an extension of time in which to respond, Plaintiff failed to file his interrogatory response. As a result, on August 19, 2003, Defendants filed a Motion to Dismiss pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure.

On November 5, 2003, this Court denied Defendants' Motion to Dismiss after Plaintiff satisfactorily explained the reason he failed to comply with Judge Scott's Order. This Court granted Plaintiff an additional thirty days within which to file his response to Defendants' First Set of Interrogatories. Plaintiff filed and served his response to Defendants' First Set of Interrogatories on November 21, 2003. This response, however, was simply a photocopy of the response Plaintiff initially filed on August 29, 2002, the one Judge Scott found to be inadequate.

Consequently, Defendants filed a second Motion to Dismiss on December 19, 2003. Plaintiff filed a response in opposition. Therein, Plaintiff did not deny that he simply re-filed his initial interrogatory response. Rather, he argued that Judge Scott did not have dispositive jurisdiction, and therefore lacked the proper authority to find his initial interrogatory response inadequate. Further, Plaintiff argued that he did not fail to respond as Defendants alleged because he did indeed file a response.

On May 24, 2004, this Court denied Defendants' Second Motion to Dismiss. In doing so, however, this Court rejected Plaintiff's arguments and excuses for not complying with Judge Scott's Order. Nonetheless, because Plaintiff is proceeding *pro se,* this Court determined that granting the relief Defendants requested would be too drastic a measure at that stage of the litigation. See *Bobal v. Rensselaer Polytecnic Inst.,* 916 F.2d 759, 764 (2d Cir.1990) ( "dismissal with prejudice [under Rule 37] is a harsh remedy to be used only in extreme situations ...."). This Court warned Plaintiff that his lawsuit may be dismissed with prejudice if he did not file and serve appropriate responses to Defendants' First Set of Interrogatories within thirty days. *Cf. id.* at 764 (discussing that a court may dismiss an action brought by a *pro se* plaintiff if such plaintiff has been advised by

the court that further non-compliance with a court order could result in dismissal of the case with prejudice).

**\*2**  On June 17, 2004, Plaintiff filed a Motion to Extend the thirty-day response deadline. By Order filed July 7, 2004, this Court directed Defendants to provide Plaintiff with another copy of their First Set of Interrogatories, extended Plaintiff's deadline to respond to August 30, 2004, and warned Plaintiff that this was his final extension of time and that his failure to respond could result in his case being dismissed with prejudice. On August 13, 2004, Plaintiff filed his response to Defendants' First Set of Interrogatories.

On September 2, 2004, Defendants filed their instant Third Motion to Dismiss pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure. By Order filed October 7, 2004, this Court directed Plaintiff to file a response to Defendants' motion on or before October 29, 2004. On October 29, 2004, Plaintiff filed a Motion for Extension of Time to respond. By Order filed November 4, 2004, this Court extended Plaintiff's response deadline to November 29, 2004, and warned Plaintiff that his failure to file a response could lead to Defendants' motion being granted as uncontested. To date, Plaintiff has not filed a response to Defendants' motion.

## III. DISCUSSION

A. Dismissal under Rule 41(b) For Failure to Prosecute
This case first warrants dismissal based on Plaintiff's failure to prosecute, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, which provides that:

> [f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join

a party under Rule 19, operates as an adjudication upon the merits.

FED. R. CIV. P. 41(b).

Rule 41(b) does not define what constitutes failure to prosecute. However, the Second Circuit has stated that failure to prosecute "can evidence itself either in an action lying dormant with no significant activity to move it or in a pattern of dilatory tactics." *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 42 (2d Cir.1982). Dismissal pursuant to Rule 41(b) falls within the court's discretion. *See id.* at 42-43 ("the scope of review of an order of dismissal is confined solely to whether the trial court has exercised its inherent power to manage its affairs within the permissible range of its discretion"). It is, however, "a harsh remedy to be utilized only in extreme situations." *Harding v. Fed. Reserve Bank,* 707 F.2d 46, 50 (2d Cir.1983) (quoting *Theilmann v. Rutland Hosp., Inc.,* 455 F.2d 853, 855 (2d Cir.1972) (per curiam); *see also Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664, 665 (2d Cir.1980) (discussing the sanction of dismissal for failure to prosecute as "pungent, rarely used, and conclusive"). This is particularly true in cases involving *pro se* litigants, where dismissal for failure to prosecute should only be granted "when the circumstances are sufficiently extreme." *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996) (citing *Nita v. Connecticut Dep't of Envtl. Prot.,* 16 F.3d 482, 487 (2d Cir.1994)).

**\*3**  The following factors, none of which is dispositive, must be considered in determining whether dismissal for failure to prosecute is warranted: (1) the duration of the plaintiff's failures, (2) whether the plaintiff received notice that further delays would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) whether an appropriate balance has been struck between alleviating the court's calendar congestion and protecting the litigants' due process rights, and (5) whether lesser sanctions would be appropriate. *See United States ex rel. Drake v. Norden Sys., Inc.,* 375 F.3d 248, 255 (2d Cir.2004); *Nita,* 16 F.3d at 485; *Feurtado v. City of New York,* 225 F.R.D. 474, 477 (S.D.N.Y.2004) (quoting *Jackson v. City of New York,* 22 F.3d 71, 74 (2d Cir.1994)). In the present case, these factors weigh in favor of dismissal.

Case 9:15-cv-01443-TJM-TWD    Document 134    Filed 12/20/18    Page 32 of 34
Folk v. Rademacher, Not Reported in F.Supp.2d (2005)
2005 WL 2205816

1. Duration of Failures

The relevant inquiry on this factor is twofold: (1) whether the plaintiff is at fault for failing to prosecute, and (2) whether the plaintiff's failures were of significant duration. *See Norden Sys.,* 375 F.3d at 255.

In this case, Plaintiff has failed in two ways. First, as noted above, Plaintiff has failed to respond to Defendants' Third Motion to Dismiss, despite twice being directed by this Court to do so. Second, and more significant, Plaintiff has failed to adequately comply with Judge Scott's discovery Order of May 27, 2003. Plaintiff has been afforded numerous opportunities to file an appropriate response to Defendants' First Set of Interrogatories. This Court alone has twice extended Plaintiff the benefit of the doubt by denying two Motions to Dismiss for Plaintiff's failure to engage in discovery. While Plaintiff did, in fact, file a response to Defendants' First Set of Interrogatories on August 13, 2004, his response is wholly inadequate. Plaintiff's response contains multiple objections to Defendants' basic interrogatory requests and does not provide anything by way of meaningful discovery. In fact, no useful information whatsoever is contained in Plaintiff's response. Clearly, Plaintiff alone is responsible for repeatedly filing inadequate responses to Defendants' discovery request. As a result, Defendants still have not received any meaningful response to their interrogatory requests.

With respect to the second inquiry, which concerns the duration of Plaintiff's failures, it has been almost one year that Plaintiff has failed to file a response to Defendants' Third Motion to Dismiss. The delay caused by Plaintiff's failure to response to Defendants' interrogatory request is even more significant. Defendants filed and served their First Set of Interrogatories on August 17, 2001. It has thus been more than *four years* and Plaintiff still has not filed an adequate response. This is a failure of significant duration. *Cf. Chira,* 634 F.2d at 666-67 (delay of six months sufficient to warrant dismissal for failure to prosecute); *Antonios A. Alevizopoulos & Assoc., Inc. v. Comcast Int'l Holdings, Inc.,* No. 99 Civ. 9311, 2000 WL 1677984, at *2 (S.D.N.Y. Nov.8, 2000) (delay of four months warranted dismissal). Thus, this Court finds that this factor weighs in favor of dismissal. In this Court's view, all delay in this case is attributable to Plaintiff and it is of significant duration.

2. Notice of Dismissal

**\*4** The Second Circuit requires that the plaintiff receive adequate notice that the case could be dismissed due to inaction. *See Martens v. Thomann,* 273 F.3d 159, 180-81 (2d Cir.2001). In the present case, Plaintiff had adequate notice. First, both the initial Scheduling Order on Defendants' Third Motion to Dismiss and the Order granting Plaintiff's request for an extension of time warned Plaintiff that his failure to file a response as directed could lead to Defendants' motion being granted as uncontested. Second, this Court's Decision and Order denying Defendants' First Motion to Dismiss explicitly stated that Defendants were free to seek dismissal of Plaintiff's Complaint if he failed to respond to the First Set of Interrogatories as directed. Moreover, this Court's Decision and Order denying Defendants' Second Motion to Dismiss warned Plaintiff that his failure to file appropriate responses to Defendants' First Set of Interrogatories could result in this action being dismissed with prejudice. Because Plaintiff was repeatedly put on notice that his case could be dismissed due to his continued inaction, this factor strongly weighs in favor of dismissal. *See Lyell Theatre,* 682 F.2d at 42-43 (Rule 41(b)) dismissal upheld where plaintiff was warned by opposing counsel and the court that dismissal for failure to prosecute was possible).

3. Prejudice to Defendants

The third factor requires an inquiry into whether the defendant has been prejudiced by the plaintiff's inaction. "Prejudice to defendants resulting from unreasonable delay may be presumed, but in cases where delay is more moderate or excusable, the need to show actual prejudice is proportionately greater." *Lyell Theatre,* 682 F.2d at 43 (citations omitted). In *Lyell Theatre,* the court presumed prejudice where the plaintiff on numerous occasions failed to file documents as directed by the court. *Id.* at 39-40, 43. Similar to the present case, the plaintiff in *Lyell Theatre* continued to ignore the court's orders even after he had been warned that he was risking dismissal. *Id.* at 39. Under *Lyell Theatre,* the prejudice to Defendants in this case may be presumed. Thus, this factor weighs in favor of dismissal.

4. Balance between Calendar Congestion and Due Process Rights

The fourth factor requires the court to consider the balance between calendar congestion and the plaintiff's right to present his or her case. *See Norden Sys.,* 375 F.3d at 257. In this regard, " 'a court must not let its zeal for a tidy calendar overcome its duty to justice." ' *Feurtado,* 225 F.R.D. at 480 (quoting *Davis v. United Fruit Co.,* 402 F.2d 328, 331 (2d Cir.1968)). Plaintiff's failure to comply with Judge Scott's discovery order has resulted in this Court having to prepare and file numerous scheduling orders, as well as decide three separate motions to dismiss. While this has been a needless expenditure of judicial resources, this Court cannot conclude that the overall effect on docket congestion has been significant.

**\*5** This Court notes, however, that Plaintiff has been afforded Due Process rights in that he has been provided numerous opportunities to comply with the Orders of this Court. Thus, Plaintiff's own failure to litigate this matter is not a denial of Due Process. *See Dodson v. Runyon,* 957 F.Supp. 465, 470 (S.D.N.Y.1997) ("any claim that plaintiff's due process rights were violated thus cannot prevail because the delay and resultant dismissal of plaintiff's case are of his own making"); *cf. Feurtado,* 225 F.R.D. at 480 (repeated failure to comply with court orders diminishes a plaintiff's right to present his claims). Accordingly, this factor also weighs in favor of dismissal.

### 5. Consideration of Lesser Sanctions

Finally, the Second Circuit requires district courts to consider whether lesser sanctions would sufficiently remedy any prejudice resulting from the plaintiff's inaction. *See Norden Sys.,* 375 F.3d at 257. Upon reviewing the entire record in this case, it is the opinion of this Court that Plaintiff has no intention of complying with this Court's Orders or properly litigating this case. Plaintiff has repeatedly ignored court orders by failing to file a response to Defendants' Third Motion to Dismiss and to Defendants' First Set of Interrogatories. Given the procedural history of this case, this Court finds that any sanction short of dismissal would be ineffective. *See Smith v. Human Res. Admin. of New York City,* 2000 WL 307367, at \*3 (S.D.N.Y. Mar.24, 2000) (finding lesser sanctions inappropriate where past court orders did not motivate the plaintiff to move the case forward); *Alevizopoulos,* 2000 WL 1677984, at 4 (finding lesser sanctions inappropriate based on repeated failures to comply with court orders). Thus, this final factor also weighs in favor of dismissal.

Accordingly, this Court finds that dismissal of this case is warranted under Rule 41(b) for Plaintiff's failure to prosecute.

### B. Dismissal under Rule 37(b) For Failure to Comply with Discovery Orders

"A district court may impose sanctions when 'a party ... fails to obey an order to provide or permit discovery." ' *Burns v. Imagine Films Entm't, Inc.,* 164 F.R.D. 594, 598 (W.D.N.Y.1996) (quoting FED. R. CIV. P. 37(b)). Rule 37 of the Federal Rules of Civil Procedure, which concerns the discovery obligations of civil litigants, vests district courts with "broad power" and discretion to impose sanctions, including dismissal, on parties who fail to adhere to discovery orders. *See Friends of Animals, Inc. v. United States Surgical Corp.,* 131 F.3d 332, 334 (2d Cir.1997) (per curiam); *see also Jones v. J.C. Penney's Dep't Stores, Inc.,* 228 F.R.D. 190, 195 (W.D.N.Y.2005) (identifying dismissal of the action as an available sanction under Rule 37); *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.,* No. 03 Civ. 5562, 2005 WL 1958361, at \*9 (S.D.N.Y. Aug. 16, 2005).

**\*6** While Rule 37 dismissal is a drastic remedy to be reserved only for extreme circumstances, it "is warranted ... where a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault." *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.,* 845 F.2d 1172, 1176 (2d Cir.1988) (and cases cited therein); *see also Societe Int'l v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) (sanctions under Rule 37 justified where responding party has control over information requested and fails or refuses production without showing of inability to comply with court's order). Moreover, "dismissal with prejudice may be imposed even against a plaintiff who is proceeding pro se, so long as a warning has been given that noncompliance can result in dismissal." *Valentine v. Museum of Modern Art,* 29 F.3d 47, 50 (2d Cir.1994) (per curiam).

For all of the reasons discussed above, this Court finds that dismissal of this case is also proper under Rule 37(b) for Plaintiff's failure to comply with discovery orders.

### IV. CONCLUSION

Mindful of the fact that *pro se* cases should not easily be dismissed for procedural deficiencies, this Court concludes that Plaintiff's failures in this case go beyond procedural deficiencies, and constitute actual neglect. Plaintiff has failed to diligently prosecute this action in any manner, and has failed to comply with orders of this Court. As such, because each of the factors relevant to the Rule 41(b) and Rule 37(b) analysis favor dismissal, this Court will dismiss this case with prejudice.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Third Motion to Dismiss (Docket No. 145) is GRANTED.

FURTHER, that this case is dismissed with prejudice pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 2205816

---

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.