UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────────

GREGORY GALBERTH,

                                        Plaintiff,              9:15-cv-1443
v.                                                              (TJM/TWD)


J. BIELWIEZ, et al.,

                                        Defendants.
───────────────────────────────────────────────

APPEARANCES:                                    OF COUNSEL:

GREGORY GALBERTH
Plaintiff, *pro se*
c/o Alex Purcell
175 Remsen Street
6th Floor
Brooklyn, NY 11201

HON. LETITIA JAMES                              KEITH J. STARLIN, ESQ.
New York State Attorney General                 Asst. Attorney General
The Capitol
Albany, NY 12224
Attorney for Defendants

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION AND ORDER

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred for a report and recommendation by the Honorable Thomas J. McAvoy, Senior

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Currently

pending before the Court is Defendants' second motion to dismiss Plaintiff's amended complaint

in its entirety pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to

prosecute.  (Dkt. Nos. 153; 153-8.)  Alternatively, Defendants request an order (1) extending the

time to conduct Plaintiff's deposition and move for summary judgment, (2) directing Plaintiff to appear at his deposition, and (3) directing Plaintiff to pay costs incurred as a result of Plaintiff's failure to appear at three properly noticed depositions.  (Dkt. No. 153-8 at 4.[1])  Plaintiff has not responded in opposition to Defendants' motion to dismiss despite the Court *sua sponte* extending the time in which to do so.  (Dkt. No. 154.)  For the reasons that follow, the Court recommends that Defendants' motion be granted.

## I.      BACKGROUND AND DEFENDANTS' FIRST MOTION TO DISMISS

Plaintiff commenced this action on December 7, 2015.  The Court presumes familiarity with the procedural history leading up to Defendants' first motion to dismiss for failure to prosecute.  (Dkt. No. 103.)  A complete discussion of that history can be found in the Court's December 20, 2018, Report-Recommendation on Defendants' first motion to dismiss.  (Dkt. 134.)

In short, between January and November 2017, Plaintiff filed a series of motions to amend the complaint, motions for reconsideration, an appeal of the Court's Order denying Plaintiff's letter motion to further supplement the complaint, and submissions in support of these filings.  (*See* Dkt. Nos. 56, 59, 60, 61, 66, 67, 72, 77, 79, 80, 83, 85, 87.)  All of Plaintiff's motions ultimately were denied, as was his appeal.  (*See* Dkt. Nos. 62, 76, 84, 88.)

Defendants then proceeded with attempting to depose Plaintiff.  (Dkt. No. 153-8 at 3.) However, Plaintiff failed to appear at his deposition on two separate occasions—May 3, 2018, and June 13, 2018—after being properly noticed.  (Dkt. Nos. 134 at 8-11; 153-8 at 3.)

---

[1]  Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.  Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs.

Moreover, the Court had specifically ordered Plaintiff to appear at the June 13, 2018, deposition or risk facing sanctions, including dismissal.  (Dkt. Nos. 93, 95.)

On July 20, 2018, Defendants filed their first motion to dismiss for failure to prosecute. (Dkt. No. 103.)  Although the Court found dismissal for failure to prosecute "would be warranted," on December 20, 2018, it was recommended that Defendants' motion to dismiss be denied without prejudice in deference to Plaintiff's *pro se* status.  (Dkt. No. 134 at 16-18.)  It was further recommended that Plaintiff be afforded "one final chance to fulfill his obligations and appear for his deposition." *Id.* at 17.  The Court specifically warned Plaintiff that "**failure to appear at his deposition for any reason whatsoever may result in this Court *sua sponte* recommending dismissal of this action with prejudice** . . . **for failure to prosecute, failure to comply with a discovery order, and failure to comply with a court order**." *Id.* (emphasis in original).  On March 26, 2019, the District Court adopted the Report-Recommendation in full. (Dkt. No. 136.)  Judge McAvoy also granted Defendants' request for an order directing Plaintiff to appear for a deposition. *Id.* at 2.

## II.    SUBSEQUENT PROCEEDINGS

On March 26, 2019, Defendants served a notice of deposition on Plaintiff scheduling his deposition for April 23, 2019, at Marcy Correctional Facility ("Marcy"), where he was then housed, and filed a status report with the Court regarding the same.  (Dkt. Nos. 137; 153-1 at ¶ 10.)  By Text Order issued March 27, 2019, Plaintiff was ordered to appear for his deposition on April 23, 2019, as noticed by Defendants, and warned that failure to appear for the deposition could result in sanctions, including dismissal.  (Dkt. No. 138.)  Subsequently, copies of the District Court's March 26, 2019, Decision and Order and the March 27, 2019, Text Order mailed to Plaintiff at Marcy were returned to the Court as undeliverable on March 29, 2019, and April 3,

2019, respectively.  (Dkt. Nos. 139, 140.)  In each case the word "Released" was written on the envelope.  (Dkt. Nos. 139, 140.)

Defendants' notice of deposition scheduling Plaintiff's deposition for April 23, 2019, was also returned as undeliverable.  (Dkt. No. 153-1 at ¶ 12.)  Defense counsel then confirmed with the New York State Department of Corrections and Community Supervision ("DOCCS") that Plaintiff had been released from custody on or about February 27, 2019.  *Id.*  Plaintiff had not informed either the Court or defense counsel of his release or new address.  (Dkt. Nos. 141; 153-1 at ¶ 12.)

On April 10, 2019, the Court held all deadlines in abeyance and directed Plaintiff to file "updated contact information and correct address with the Court by 5/3/2019."  (Dkt. No. 142.) The Court warned Plaintiff that failure to do so "may be grounds for sanctions including but not limited to dismissal for failure to follow Court orders and directives."  *Id.*  The Court mailed a copy of this Text Order to Plaintiff at Marcy, his last known address, which was returned as undeliverable on April 17, 2019.  (Dkt. No. 143.)

On May 1, 2019, Plaintiff filed a notice of change of address with the Court.  (Dkt. No. 144.)  Plaintiff's notice indicated he was located at Gracie Square Hospital, 420 East 76th Street, New York, NY 10021 ("Gracie Square Hospital").  *Id.*  He requested that mail be sent to him at Sylvia Rivera Law Project, 147 West 24th Street, New York, NY 10011 ("Sylvia Rivera Law Project").  *Id.*  The Clerk was directed to update Plaintiff's address on the docket accordingly. (Dkt. No. 145.)  The Court reset the case deadlines and further directed that a copy of the docket and the orders previously returned as undeliverable (Dkt. Nos. 136, 138, 142) be re-mailed to Plaintiff at the address provided in Dkt. No. 144.  *Id.*  Under these new deadlines, the discovery deadline for the limited purpose of completing Plaintiff's deposition was July 15, 2019.  *Id.*

On May 29, 2019, Defendants served Plaintiff with a notice of deposition scheduling his deposition for June 25, 2019.  (Dkt. Nos. 153-1 at ¶ 16; 153-3.)  This notice of deposition was sent to Plaintiff at both the Gracie Square Hospital and Sylvia Rivera Law Project addresses. (Dkt. Nos. 153-1 ¶ 16; 153-3.)

On June 3, 2019, Plaintiff filed another notice of change of address.  (Dkt. No. 146.) Plaintiff's address was updated accordingly to "c/o Alex Purcell," 175 Remsen Street, 6th Floor, Brooklyn, NY 11201 ("Remsen Street").  *Id.*  The Court sent Plaintiff an updated docket sheet at this address, but the mail was returned as undeliverable on June 20, 2019.  (Dkt. No. 147.)

On the evening of Friday, June 21, 2019, Plaintiff left defense counsel a voicemail stating he did not feel well and would not be attending his deposition scheduled for June 25, 2019. (Dkt. No. 153-1 at ¶ 17.)  Defense counsel did not listen to this voicemail until the morning of Monday, June 24, 2019.  *Id.*  That same day, Defendants served Plaintiff with yet another notice of deposition, rescheduling his deposition for July 11, 2019.  *Id.* at ¶ 18.  Defendants mailed this notice to the Remsen Street address.  (Dkt. Nos. 153-1 at ¶ 18; 153-4.)  The notice of deposition included a statement warning Plaintiff that his "failure to attend the deposition, be sworn and answer appropriate questions may result in sanctions," including dismissal or reimbursing Defendants for expenses incurred.  (Dkt. Nos. 153-1 at ¶ 19; 153-4 at 2.)  The cover letter to the notice of deposition also warned Plaintiff that if he did not appear for his deposition and did not "provide timely notice ahead of time of [his] unavailability," Defendants would "seek sanctions" "up to and including the dismissal" of the lawsuit.  (Dkt. Nos. 153-1 at ¶ 20; 153-4 at 1.)

According to defense counsel, at no time prior to July 11, 2019, did Plaintiff contact defense counsel to advise he would not be able to attend the July 11th deposition and/or to request the deposition be rescheduled.  (Dkt. No. 153-1 at ¶ 21.)  Furthermore, defense counsel

states that at no time prior to July 11, 2019, was the notice of deposition that was mailed to Plaintiff's Remsen Street address returned to counsel's office as undeliverable.  *Id.* at ¶ 22.

Plaintiff failed to appear at the July 11, 2019, deposition.  *Id.* at ¶ 23.  Plaintiff also failed to contact defense counsel in any manner prior to the date or time of this scheduled deposition to inform counsel he could not come or request a different date.  *Id.*  The deposition was scheduled to begin at 10:00 a.m., and defense counsel and the court reporter retained by defense counsel waited until approximately 11:13 a.m. before concluding Plaintiff was not going to appear.  *Id.* at ¶ 24.  Defense counsel put a statement on the record confirming Plaintiff had failed to appear or contact counsel in any way.  (Dkt. Nos. 153-1 at ¶ 24; 153-5.)

Later that same day, Defendants filed a letter with the Court stating Plaintiff had failed to appear for his scheduled deposition, and requested that the pretrial discovery motion be stayed pending disposition of an anticipated motion to dismiss.  (Dkt. No. 148.)  Defendants mailed a copy of this letter to Plaintiff at the Remsen Street address, his last provided address.  (Dkt. Nos. 148 at 3; 153-1 at ¶ 25.)

On July 12, 2019, the Court granted the letter request and directed Defendants to file the motion to dismiss for failure to prosecute by August 2, 2019.  (Dkt. No. 149.)  The Court mailed a copy of this Text Order to Plaintiff at his address on file.  *Id.*

According to Defendants, on July 19, 2019, Plaintiff left defense counsel a voicemail indicating he had heard Defendants were going to file a motion to dismiss and asked counsel to contact him.  (Dkt. No. 153-1 at ¶ 27.)  However, Plaintiff did not leave a phone number or address in this voicemail.  *Id.*  Similarly, on July 22, 2019, Plaintiff left defense counsel another voicemail regarding the anticipated motion to dismiss and asking when his deposition would be scheduled.  *Id.* at ¶ 28.  Plaintiff did not leave a phone number or address.  *Id.*  On July 23, 2019,

Plaintiff left a third voicemail for defense counsel. *Id.* at ¶ 29. In this message, Plaintiff asked counsel to call an individual named Alex Purcell at a number left in the message. *Id.* Defense counsel did not contact this individual. *Id.* As Defendants point out, the content of Plaintiffs' three voicemails indicate Plaintiff was aware of Defendants' plans to file a motion to dismiss for failure to prosecute. *Id.* at ¶ 30.

Also on July 23, 2019, Plaintiff informed the Clerk's Office via telephone of a change in his address. (Dkt. No. 150.) The new address given was 141 West 110th Street, Room 512, New York, NY 10026-4201 ("West 110th Street"). *Id.* On July 23, 2019, the following Text Order was issued:

> Under this court's rules, an unrepresented litigant is under a duty to inform the court of any address changes IN WRITING. See N.D.N.Y.L.R. 10.1(c)(2). For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the court informed of address changes. Consequently, Plaintiff is advised that he must file a change of address within FOURTEEN DAYS, and he must continue to submit any address changes to the court as long as his action is pending. "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." N.D.N.Y. L.R. 41.2(b).

(Dkt. No. 150.) The Clerk was directed to serve a copy of the Order and a Change of Address Form on Plaintiff at his address on file, Remsen Street, and at the address provided by telephone, West 110th Street, by regular mail. *Id.* Both mailings were returned to the Court as undeliverable. (Dkt. Nos. 151; 152.) To date, Plaintiff has not filed a written notice of change of address with the Court. (*See* Docket Report.)

On July 25, 2019, defense counsel received back in the mail as "undeliverable" both the notice of deposition dated June 24, 2019, and the July 11, 2019, letter stating Plaintiff failed to appear for his deposition and indicating Defendants' intent to file a motion to dismiss. (Dkt. No.

153-1 at ¶ 32.) These two documents were received by defense counsel's office as undeliverable on the same date, despite the fact they had been mailed separately to Plaintiff approximately two and a half weeks apart. *Id.* Furthermore, defense counsel noted that the notice of deposition "had been opened and then re-sealed with scotch tape prior to being received back by [the] office as returned mail." *Id.*

Defendants filed the instant motion to dismiss for lack of prosecution on August 2, 2019. (Dkt. No. 153.) Plaintiff's response to the motion was originally due by August 19, 2019. (*See* Text Entry to Dkt. No. 153.) On August 27, 2019, the Court reviewed the docket and noted Plaintiff had not provided an updated address in writing as directed, and mail sent to his address on file has since been returned as undeliverable. (Dkt. Nos. 150, 151, 152, 154.)

By Text Order entered August 27, 2019, in view of Plaintiff's *pro se* status, the Court provided Plaintiff with "one FINAL opportunity to comply with his duties" to provide updated contact information and gave him until September 13, 2019, to do so. *Id.* The Court again warned Plaintiff that failure to provide updated contact information by that date "may be grounds for sanctions including but not limited to dismissal." *Id.* The Court also *sua sponte* extended the deadline for Plaintiff's response to the pending motion to dismiss to September 13, 2019. *Id.*

Copies of this Text Order were served on Plaintiff at his address on file, Remsen Street, as well as the address provided by telephone, West 110th Street. *Id.* Both copies were subsequently returned to the Court as undeliverable. (Dkt. Nos. 155; 156.) To date, the Court has received no further communications from Plaintiff.

## III.    DISCUSSION

"United States Courts are vested with broad discretion to impose sanctions for non-compliance with court orders, and those sanctions can include the severe sanction of dismissing a

case." *Tylicki v. Ryan*, 244 F.R.D. 146, 147 (N.D.N.Y. 2006) (Kahn, D.J.) (citing *Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, No. 01 Civ. 6600(RLC), 2005 WL 3370542, at *1 (S.D.N.Y. Dec. 12, 2005)[2] ("Moreover, the court has the inherent authority to dismiss a case when a party disobeys any of its orders.")).

Furthermore, Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute the case, or to comply with the procedural rules or orders of the court.  Fed. R. Civ. P. 41(b); *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001).  This power to dismiss may be exercised when necessary to achieve orderly and expeditious disposition of cases.  *See Freeman v. Lundrigan*, No. 95-CV-1190 (RSP/RWS), 1996 WL 481534, at *1 (N.D.N.Y. Aug. 22, 1996). It is also well-settled that the term "these rules" in Rule 41(b) refers not only to the Federal Rules of Civil Procedure, but also to the local rules of practice for a district court.  *Tylicki*, 244 F.R.D. at 147.

In determining whether such dismissal is appropriate, the court should consider (1) the duration of the delay occasioned by the plaintiff's conduct, (2) whether the plaintiff has received notice that further delay would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) the plaintiff's right to due process, and (5) the efficacy of lesser sanctions.  *Lucas v. Miller*, 84 F.3d 532, 535 (2d Cir. 1996); *Davis v. Citibank, N.A.*, 607 F. App'x 93, 94 (2d Cir. 2015).  No one factor is dispositive.  *See Martens v. Thomann*, 273 F.3d 159, 180 (2d Cir. 2001).  However, with regard to *pro se* litigants, Rule 41(b) dismissal "remains

---

[2]  The Court will provide Plaintiff with a copy of all of the unpublished decisions cited in this Report-Recommendation in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

a harsh remedy to be utilized only in extreme situations," and *pro se* plaintiffs "should be granted special leniency regarding procedural matters." *LeSane*, 239 F.3d at 209 (citation omitted).

Considering the first factor, Plaintiff has failed to take meaningful action in this case. This action was commenced on December 7, 2015, yet discovery remains at a standstill. As explained by Judge McAvoy, instead of moving forward to discovery on those claims which the Court has determined to remain in the case, Plaintiff repeatedly filed documents seeking review of the Court's decision dismissing his deliberate-indifference claims. (*See* Dkt. No. 88). As a result, Plaintiff's deposition originally scheduled to take place on September 13, 2016, and then again on June 13, 2017, was adjourned.

Moreover, Plaintiff has now failed to appear for his deposition three times, two of which were Court Ordered. (Dkt. Nos. 103-4; 93, 95; 134 at 18; 136 at 2; 138; 148.) At the scheduled May 3, 2018, deposition, and re-scheduled June 13, 2018, deposition, a DOCCS officer testified under oath that Plaintiff refused to leave his cell to attend the deposition. (Dkt. Nos. 103-4; 103-6; *see* Dkt. No. 134 at 14.) As noted in the Report-Recommendation on Defendants' first motion to dismiss, the Court is mindful that Plaintiff arguably raised an issue that he did not refuse to attend the June 13, 2018, deposition. (Dkt. No. 134 at 14-15.) For the third deposition, however, scheduled to take place on July 11, 2019, Plaintiff simply failed to appear without contacting defense counsel in any manner prior to the deposition to indicate he would not be able to attend. (Dkt. Nos. 153-1 at ¶¶ 21-24.)

Furthermore, the Court has heard from Plaintiff on only three occasions since the District Court issued its March 26, 2019, Decision and Order. (Dkt. Nos. 144; 146; 150.) All three occasions were to notify the Court of a change in Plaintiff's address. (Dkt. Nos. 144; 146; 150.) Plaintiff has taken no other action in this case.

10

Based on the foregoing, the Court finds Plaintiff has failed to take meaningful action in this case. Notably, Plaintiff has not responded to the present motion and there is no basis for believing that a renewal of communication is imminent. This factor thus weighs in favor of dismissal.

Regarding the second factor, "[t]he Second Circuit requires that the plaintiff receive adequate notice that the case could be dismissed due to inaction." *Folk v. Rademacher*, No. 00-CV-199S (WMS), 2005 WL 2205816, *4 (W.D.N.Y. Sept. 9, 2005) (citing *Martens*, 273 F.3d at 180-81); *see also Europacific Asset Mgmt. Corp. v. Tradescape, Corp.*, 233 F.R.D. 344, 353 (S.D.N.Y. 2005) ("A court's prior warning of dismissal, and subsequent inaction by a plaintiff, weighs in favor of dismissal."). Here, the Court has repeatedly informed Plaintiff that his failure to appear for his deposition or to otherwise comply with Court orders may result in a dismissal of the action for failure to prosecute and failure to follow Court orders. (Dkt. Nos. 93; 95; 134 at 17; 138.) The Court also informed Plaintiff specifically that his failure to keep his address on file updated as required by Court rules and orders could result in dismissal of the action. (Dkt. Nos. 142; 150; 154.) Plaintiff has not complied with these Court orders. Accordingly, this factor favors dismissal of the action.

The third factor is also satisfied as further delay is likely to prejudice Defendants. This case has been pending for almost four years, the events giving rise to Plaintiff's claims allegedly occurred between six and seven years ago, and Plaintiff has yet to be deposed. (Dkt. Nos. 1, 44.) Further delay may well affect the parties' ability to locate witnesses and to preserve evidence. *See, e.g.*, *Georgiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) ("The passage of time always threatens difficulty as memories fade.").

As to the fourth factor, the Court finds that the need to alleviate congestion on the Court's docket outweighs Plaintiff's right to receive a further chance to be heard in this case.  It is the need to monitor and manage cases such as this that delay the resolution of other cases and contribute to the Second Circuit's relatively long median time to disposition for such civil rights cases.  Accordingly, this factor also weighs in favor of dismissal.

Finally, the Court has carefully considered sanctions less drastic than dismissal and finds them to be inadequate under the circumstances.  For example, the Court is persuaded that issuing an order reprimanding Plaintiff for his conduct would be futile in light of his history of non-compliance and disregard of Court orders.  Further, because Plaintiff is proceeding *in forma pauperis*, issuing a monetary sanction, including fees and costs associated with the three failed depositions, would not be an effective remedy at this time.

After weighing the above factors with the special solicitude that must be granted to *pro se* litigants, the Court finds dismissal for failure to prosecute is warranted in this case.  Therefore, the Court recommends granting Defendants' motion to dismiss for failure to prosecute pursuant to Rule 41 of the Federal Rules of Civil Procedure.

**WHEREFORE**, it is hereby

**RECOMMENDED** that Defendants' motion to dismiss for lack of prosecution (Dkt. No. 153) be **GRANTED** and that this action be **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** that the Clerk serve a copy of this Report-Recommendation and Order on Plaintiff to his written address on file (c/o Alex Purcell, 175 Remsen Street, 6th Floor  Brooklyn, NY 11201) and address provided by telephone (141 West 110th Street, Room 512, New York,

NY 10026-4201), along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).[3]

 Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated:  September 20, 2019
   Syracuse, New York

                Thérèse Wiley Dancks
                United States Magistrate Judge

---

[3]  Out of an abundance of caution and because the Court's August 27, 2019, Text Order (Dkt. No. 154) advising Plaintiff that all future correspondence from the Court would be sent only to the written address on file, and not to the verbal address provided, was returned as undeliverable, the Clerk is directed to serve Plaintiff at both addresses.  (*See* Dkt. Nos. 154, 155, 156.)

[4]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2005 WL 3370542
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

INTERNET LAW LIBRARY, INC.
and Hunter M.A. Carr, Plaintiffs,
v.
SOUTHRIDGE CAPITAL
MANAGEMENT, LLC, et al., Defendants.
COOTES DRIVE, LLC.,
Defendant, Counterclaim-Plaintiff,
v.
INTERNET LAW LIBRARY, INC.,
Plaintiff, Counterclaim-Defendant.
Jack TOMPKINS, Kerwin Drouet, et al., Plaintiffs,
v.
SOUTHRIDGE CAPITAL
MANAGEMENT, et al., Defendants.

No. 01 Civ. 6600(RLC).
|
Dec. 12, 2005.

**Attorneys and Law Firms**

Koerner Silberberg & Weiner, LLP, New York, NY, for
Internet Law Library, Inc.

Maryann Peronti, of counsel.

Christian, Smith & Jewell, Houston, TX, for Internet Law
Library, Inc.

Gary M. Jewell, James W. Christian, of counsel.

Tate & Associates, Richmond, TX, for Internet Law Library,
Inc.

Richard L. Tate, James W. Christian, of counsel.

Dla Piper Rudnick Gray Cary U.S. LLP, New York, NY, for
Southridge Capital Management LLC, Cootes Drive LLC,
Stephen Hicks, Daniel Pickett, Christy Constabile, David
Sims, and Navigator Mangement Ltd.

Perrie M. Weiner, Caryn G. Mazin, Palmina M. Fava, of
counsel.

Kramer Levin Naftalis & Frankel LLP, New York, NY, for
Citco Group Limited.

Michael J. Dell, of counsel.

Law Offices of Michael S. Rosenblum, Los Angeles, CA,
for Southridge Capital Management LLC, Cootes Drive LLC,
Stephen Hicks, Daniel Pickett, Christy Constabile, David
Sims, and Navigator Management Ltd.

Michael S. Rosenblum, Amy M. Caves, of counsel.

Hanley Conroy Bierstein & Sheridan LLP, New York, NY, for
Kirwin Drouet, Jack Thompkins and Hunter M.A. Carr.

Thomas I. Sheridan, III, of counsel.

Morrison & Foerster LLP, New York, NY, for Mark Valentine.

Carl H. Loewenson, Jr., James E. Johnson, Joel C. Haims, of
counsel.

Gibbons, Del Deo, Dolan, Griffinger & Vecchione, PC, New
York, NY, for Thomson Kernaghan & Co, Ltd., and TK
Holdings, Inc.

Debra A. Clifford, of counsel.

OPINION

CARTER, J.

BACKGROUND

**\*1** This case is the result of several actions arising out of a
set of related financing transactions. [1] The court consolidated
these cases and named ITIS Holdings Inc. ("INL") (f/k/a ITIS
Inc. and Internet Law Library), Hunter Carr, Kerwin Drouet,
and Jack Tompkins the plaintiffs. *Internet Law Library,
Inc. v. South Ridge Capital Mgmt., LLC,* 208 F.R.D. 59
(S.D.N.Y.2002) (Carter, J). Accordingly, Southridge Capital
Management LLC, Stephen Hicks, Daniel Pickett, Christy
Constabile, David Sims, Navigator Management Ltd., The
Citco Group Limited, Citco Trustees (Cayman) Limited and
Cootes Drive, LLC ("Cootes Drive") were named defendants
and Cootes Drive's claims against INL became counterclaims.
*Id.*

[1]

On January 12, 2001, INL, its Chief Executive Officer, Hunter M .A. Carr, and several shareholders filed suit against Southridge and a number of its representatives in the Southern District of Texas claiming, among other things, fraud, misrepresentation of material facts, manipulation of INL's stock and breach of contract. *See Internet Law Library, Inc., et al. v. South Ridge Capital Mgmt., LLC et al,* 01 Civ. 660(RLC). Later, some additional shareholders of INL brought suit in the Southern District of Texas alleging much the same facts. *See Brewer, et al. v. South Ridge Capital Mgmt ., LLC, et al.,* 0202 Civ. 0138(RLC). Finally, Cootes Drive LLC, a Southridge affiliate, brought suit in this court against INL and several of its directors asserting claims for breach of contract and fraud. *See Cootes Drive, LLC v. Internet Law Library, Inc.,* 01 Civ. 0877(RLC).

Over the years the court has dealt with various issues, (*see e.g., Internet Law Library Inc. v. South Ridge Capital Mgmt., LLC,* 223 F.Supp.2d 474 (S.D.N.Y.2002) (Carter, J) (hereinafter *"Internet Law I"* )) with which familiarity is assumed. Most importantly, the court dismissed the plaintiffs' claims with prejudice in *Internet Law Library Inc. v. South Ridge Capital Mgmt ., LLC,* 2003 WL 21537782 (S.D.N.Y.2003) (Carter, J.) (hereinafter *Internet Law II* ).

In the instant matter, defendant Cootes Drive moves for partial summary judgment against INL on its third counterclaim for breach of contract for failure to redeem preferred stock pursuant to a stock purchase agreement. Defendant Cootes Drive also seeks partial summary judgment against INL on its fourth counterclaim for breach of contract for failure to honor a promissory note. The plaintiffs cross move to dismiss defendants' counterclaims pursuant to Rule 37(b)(2)(C), F.R. Civ. P., due to alleged abuses of discovery procedures, and move for the court to reconsider its judgment entered July 8, 2005 dismissing plaintiffs' claims with prejudice. Under separate covers, plaintiffs have twice moved to supplement the record of the aforementioned motions and defendants have moved to strike some of plaintiffs' supporting affidavits. We consolidate the former motions with the latter and resolve them all in this opinion. Because of the nature of the issues raised in plaintiffs' motions, we reach them first.

DISCUSSION

I PLAINTIFFS' MOTION FOR RECONSIDERATION

Plaintiffs' motion for reconsideration brought pursuant to U.S. Dist. Ct. S.D.N.Y. Local Civil Rule 6.3 is based on the court's possible oversight of two matters: (a) the *res judicata* effect

of its June 8, 2003 decision, specifically whether plaintiffs' affirmative defenses are barred, and (b) because Rule 37(b)(2)(C), Fed. R. Civ. P ("Rule 37") allegedly does not authorize sanctions. The parties have also made a request for the to court clarify these two issues, especially as they pertain to the order entered on July 8, 2003.

Under Rule 37, if a party "fails to obey an order entered under Rule 26(f) ... the court in which the action is pending may ... (C) ... strike [ ] out pleadings or parts thereof ... or dismiss[ ] the action or proceeding or any part thereof, or render judgment by default against the disobedient party." Plaintiffs' attempt to read the rule as only being applicable to parties who fail to participate in discovery is inapposite to the plain meaning of the statute. Moreover, the court has the inherent authority to dismiss a case when a party disobeys any of its orders. *See Chambers v. Nasco, Inc.,* 501 U.S. 32, 45 (1991). Plaintiffs flagrantly disregarded the discovery instructions of this court. As a result the court, acting well within its explicit and implicit authority, dismissed the plaintiffs' complaint. The court did not, however, dismiss the defendants' counterclaims or the plaintiffs' affirmative defenses to those counterclaims.

**\*2** Cootes Drive argues that because the claims in plaintiffs' dismissed complaint form the basis for their affirmative defenses, plaintiffs' affirmative defenses are now barred by claim preclusion. Under the doctrine of claim preclusion, once a judgment has been made on the merits, the parties are prohibited from bringing a second suit based upon the same claims. *Hough v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 757 F. Supp 283, 291 (S.D.N.Y.1991) (Conner, J.). Cootes Drive would be correct to assert that plaintiffs are precluded from bringing another complaint based upon the same claims found in their dismissed complaint. [2] However, that issue is not before the court. The court mindfully chose not to dismiss the plaintiffs' affirmative defenses. Thus, these affirmative defenses have not been adjudicated and there is no logic or fairness to treating them as if they have.

[2]

A dismissal under Rule 37 is an adjudication on the merits. *See* Rule 41(b), F.R. Civ P.; *Nasser v. Isthmian Lines,* 331 F .2d 124 (2d Cir.1964).

We confirm that the court was within its authority in dismissing plaintiffs' complaint and that plaintiffs' affirmative defenses still stand. The court did not overlook these subjects. Accordingly, the motion for reconsideration is denied.

## II PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

While arguing that the court lacked the authority to dismiss their claims pursuant to Rule 37, the plaintiffs have the audacity to request that we now dismiss Cootes Drive's counterclaims pursuant to the same rule and for the same alleged conduct. Without delving into the sophistical reasoning that allows them to entertain these contradictory propositions, it bears repeating that plaintiffs flagrantly defied the court's order. The plaintiffs and not Cootes Drive disrespected the court. If Cootes Drive had done so, or if they ever do, the court would not hesitate to impose sanctions. The motion is denied.

## III PLAINTIFFS' MOTIONS TO SUPPLEMENT THE RECORD

On February 12, 2004 and on April 6, 2004, plaintiffs filed motions to supplement the record. The documents that are the subject of these motions were produced in connection with an action pending in Georgia. The documents themselves are the organizational documents and various agreements between companies affiliated with Cootes Drive. There are also letters and memoranda sent to and from these affiliated companies and the law firm of Dorsey & Whitney LLP, their transactional counsel. Plaintiffs assert that these documents demonstrate that the defendants operated their businesses in a tiered structure in order to limit liability. Even if true, this assertion does not make the documents relevant to Cootes Drive's claims of breach or plaintiffs' motions to dismiss and for reconsideration. Indeed, many of the documents predate the note and agreement by several years. Because plaintiffs have not sufficiently demonstrated the relevance of the documents to the motions that they seek to supplement, plaintiffs' two motions to supplement the record are denied.

## IV MOTIONS TO STRIKE PLAINTIFFS' AFFIDAVITS

**\*3** Cootes Drive moves to strike portions of the affidavit of Hunter M. Carr, dated September 19, 2003 (the "Carr Affidavit") and the affidavit of Richard L. Tate, dated September 22, 2003 (the "First Tate Affidavit") based on evidentiary objections. The court finds that these affidavits comport with Rule 56(e). Cootes Drive's motions to strike the Carr Affidavit and the First Tate Affidavit are denied.

The Citco Group Limited and Citco Trustees (Cayman) Limited (the "Citco defendants") move to strike the Affidavit of Richard L. Tate, dated October 20, 2003 (the "Second

Tate Affidavit"). The Second Tate Affidavit is submitted as a response to the Citco Defendants' motion for summary judgment. However, to the court's best knowledge or that of the Citco defendants, there never was such a motion. Submission of a reply to a nonexistent motion is clearly inappropriate; furthermore, even if the submission of the affidavit was appropriate, the contents are not. An attorney's affidavit is typically used to present documents to the court and should not be used as counsel's personal vehicle to lobby the court. *Universal Film Exchanges, Inc. v. Walter Reade, Inc.,* 37 F.R.D. 4, 5 (S.D.N.Y.1965) (Levet, J.). In the Second Tate Affidavit, Tate, attorney for the plaintiffs, engages in extensive argumentation and draws numerous conclusions of law. Tate further swears to several matters of which he could have no direct personal knowledge of as an attorney that came upon this matter after the fact. The Second Tate Affidavit is more akin to a memorandum of law than to an attorney's affidavit. The motion to strike the Second Tate Affidavit in its entirety is granted.

## V COOTES DRIVE'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT

In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc .,* 477 U.S. 242, 249 (1986). A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), F.R. Civ. P.

### 1. Counterclaim Three: The Convertible Preferred Stock Purchase Agreement

After several months of negotiations, on or about May 11, 2000, Cootes Drive [3] and INL entered into the Convertible Preferred Stock Agreement (the "agreement"). Under the agreement, INL agreed to sell Cootes Drive shares of INL's 5% Series A Convertible Preferred Stock, which could be redeemed for INL common stock at Cootes Drive's request. Cootes Drive's motion for summary judgment on their third counterclaim is based on the failure of INL to honor one of these redemption requests.

[3]     Plaintiffs allege that Cootes Drive was inserted into the agreement at the eleventh hour as a substitute for

Case 9:15-cv-01443-TJM-TWD    Document 157    Filed 09/20/19    Page 17 of 28

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

Southridge and is in fact little more than a "straw man" created to insulate Southridge from liability.

To prevail on a claim for breach of contract under New York law, a party must show: 1) the existence of an agreement between the parties; 2) adequate performance of the contract; 3) breach of the contract; and 4) damages resulting from the breach. [4] The parties admit that the agreement exists, Pls. Statement Pursuant to Local Rule 56.1 ("Pls.Statement") at ¶ 1, and that the defendants performed. *Id.* at ¶ 6. INL admits that they did not honor Cootes Drive's redemption request. *Id.* at ¶ 14-15. Finally, defendants are able to show damages based upon the position it would have been in had INL performed under the agreement. Defs. Reply Mem. at 3. Cootes Drive has therefore met the requirements of their claim for breach against INL.

[4]  *Internet Law I,* 223 F.Supp.2d at 490 *citing Harsco Corp.,* 91 F.3d at 348; *See also Bridgeway Corp. v. Citibank, N.A.,* 132 F.Supp.2d 297, 305 (S.D.N.Y.2001) (Chin, J.).

**\*4**  While INL does not contest that they failed to honor the redemption request, they defend their failure to redeem the stock on the grounds that defendants, among other things, [5] fraudulently induced them into entering the agreement and materially breached the agreement. As is the case here, "[o]ne who relies upon an affirmative defense to defeat an otherwise meritorious motion for summary judgment must adduce evidence which, viewed in the light most favorable to and drawing all reasonable inferences in favor of the non-moving party, would permit judgment for the non-moving party on the basis of that defense." *Frankel v. ICD Holdings S.A.,* 930 F.Supp. 54, 65 (S.D.N.Y.1996) (Kaplan, J.). The non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *SHL Imaging, Inc. v. Artisan House, Inc.* 117 F.Supp.2d 301, 304 (S.D.N.Y.2000) (Pauley, J.). Within this framework the court will examine INL's defenses to Cootes Drive's counterclaims.

[5]  Plaintiff INL also raises a defense of "manipulation". This is not a recognized defense to breach of contract.

Plaintiffs contend that they relied upon a number of false statements made by the defendants outside of the agreement. Before deciding the underlying question of the merits of the fraudulent inducement claims, the court must first determine whether plaintiffs will be allowed to offer evidence pertaining to their claim. Under New York law, if a contract contains a merger clause, parol evidence is not admissible to "vary,

or permit escape from the terms of an integrated contract." [6] However, a general merger clause will not preclude a party from introducing parol evidence that they were induced into entering a contract by means of fraud, [7] and a party may escape liability by establishing proof of such fraud. [8] The exception to this rule is that if the contract contains a disclaimer of certain representations, the relying party cannot claim that they were defrauded as to those specific representations. [9]

[6]  *Manufacturers Hanover Trust Co. v. Yanakas,* 7 F.3d 310, 315 (2d Cir1993) *citing Fogelson v. Rackfay Construction Co.,* 300 N.Y. 334, 340, 90 N.E.2d 881, 884 (1950)

[7]  *Sabo v. Delman,* 3 N.Y.2d 155, 161-62, 164 N.Y.S.2d 714, 717-19 (1957); *Bridger v. Goldsmith,* 143 N.Y. 424, 428, 38 N.E. 458, 459 (1894) ("fraud [in the inducement] vitiates every transaction")

[8]  *See Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 320, 157 N.E.2d 597, 598, 184 N.Y.S.2d 599, 601 (1959)(contract provided that "all understandings and agreements heretofore had between the parties hereto are merged in this contract ... neither party [is] relying upon any statement or representation not embodied in the is contract").

[9]  *Citibank v. Plapinger,* 66 N.Y.2d 90, 94, 495 N.Y.S.2d 309, 312 (1985) (provision in multimillion dollar agreement stating that all guarantees are "absolute and unconditional" precluded defense of fraud)

The agreement between the parties contains both a merger clause [10] and a disclaimer of reliance. [11] Plaintiffs defend against these facts by asserting that the disclaimer is general and not specific. [12] In New York, no particular words are needed to make a disclaimer specific. [13] However, a specific disclaimer must "contain explicit disclaimers of the particular representations that form the basis of the fraud in the inducement ... the touchstone is specificity." [14] The disclaimer in question appears at the end of warranties and representations section of the agreement and reiterates that no warranties or representations shall be made other than those in the immediately preceding section. [15] This is, by nature, a general disclaimer; it lacks the specificity to meet the standard the Second Circuit has applied under New York law. New York law requires more than a "generalized boilerplate exclusion [clause]," [16] a disclaimer must speak directly to the matter at issue in order to preclude a claim of fraud in the

inducement. [17] The court therefore finds that plaintiffs are not barred from introducing evidence of fraud in the inducement.

10    "The Transaction Documents ... contain the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters ..." agreement § 4.2.

11    "The Company acknowledges and agrees that no Purchasor makes or has made any representations or warranties with respect to the transactions contemplated hereby other than those specifically set forth in this Section 2.2" agreement § 2.2.

12    "[A] general merger clause is ineffective to exclude parol evidence to show fraud in inducing the contract ..." *Danann Realty* at 320.

13    *Wells Fargo Bank Northwest, N.A. v. Taca Intern. Airlines, S .A,* 247 F.Supp.2d 352, 368 (S.D.N.Y.,2002) (Lynch, J.) *quoting Lucas v. Oxigene, Inc.,* No. 94 Civ. 1691, 1995 WL 520752 at *5 (S.D.N.Y.1995) (Mukasey, J.)

14    *Yanakas,* 7 F.3d 310, 316 *citing Grumman Allied Industries, Inc. v. Rohr Industries, Inc.,* 748 F.2d 729 (2d Cir.1984)

15    § 2.2 includes representations by the purchasers regarding their organization and authority to enter into the agreement, investment intent, "accredited investor" status, financial experience, ability to bear risk of the investment, access to information and other securities related matters.

16    *Yanakas,* 7 F.3d 310, 317.

17    *DiFilippo v. Hidden Ponds Associates,* 146 A.D.2d 737, 738; 537 N.Y.S.2d 222, 224 (N.Y.A.D. 2 Dept.1989) ("[b]ecause the [disclaimer] provision does not specifically disclaim reliance on any oral representation concerning the particular matter as to which plaintiff now claims he was defrauded, it does not foreclose him from offering evidence of the defendants' oral representations to the contrary.")

**\*5** The court now examines the claims of fraud to determine if there is a genuine dispute as to a material fact. Under New York law, a claim of fraudulent inducement requires proof (1) that the defendants made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendants, (5) that the representation was made for the purpose of inducing the other party to rely

upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity, (8) to his injury. [18] Plaintiffs list nine misrepresentations that it claims the defendants made to them. Pls. Statement at ¶ 59. Although their claim has been plead with specificity, [19] plaintiffs have failed to prove reliance on each of the statements for one or more of the following reasons. Where the defendants' alleged misrepresentations are contradicted or subsumed by material in the agreement, for example, that INL's stock would be acquired for investment purposes and not for distribution or resale, we find that the plaintiffs' claims are unreasonable as a matter of law. [20] The court finds plaintiffs' reliance on other statements to be simply unreasonable. "Reliance means reasonable reliance." *M.H. Segan Ltd. Partnership v. Hasbro, Inc.* 924 F.Supp. 512, 526 (S.D.N.Y.1996) (Cote, J.) (internal quotations and citations omitted). After analysis of the material provided by the parties, the court concludes that alleged representations such as "[t]hey would not manipulate stock in order to depress its price", Pls. Statement at ¶ 59, are so important to the functioning of a publicly traded company that no reasonable businessperson would have relied on them without putting them in writing after first discussing them at length. [21] Other misrepresentations, for example, that other companies funded by defendants experienced increases in their stock prices, Pls. Statement at ¶ 59, would have been easily verifiable. [22] The remaining statements are uncontroverted or without consequence. Holding, as we do, that INL cannot satisfy the reliance element of their affirmative defense of fraudulent inducement we need not look into the remaining elements of the claim. INL's affirmative defense of fraudulent inducement as to Cootes Drive is hereby struck insofar as it pertains to the third counterclaim.

18    *Computerized Radiological Servs. v. Syntex Corp.,* 786 F.2d 72, 76 (2d Cir.1986) *quoting Brown v. Lockwood,* 76 A.D.2d 721, 432 N.Y.S.2d 186, 193 (1980).

19    In the court's previous decision, the fraud claims were examined under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, passed pursuant to § 10(b). The court held that because the plaintiff satisfied the elements for pleading a claim under the statutes, they had satisfied the nearly identical common law fraud requirements as well. *Internet Law I,* 223 F.Supp.2d 489-90.

20    *See Brown v. E.F. Hutton Group, Inc.,* 991 F.2d 1020, 1031 (2d Cir.1993) (district court correct in granting summary judgment after holding reliance unreasonable

Case 9:15-cv-01443-TJM-TWD   Document 157   Filed 09/20/19   Page 19 of 28

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

as a matter of law where alleged misrepresentations were contradicted by offering materials); *Emergent Capital Inv. Management, LLC v. Stonepath Group, Inc.,* 343 F.3d 189, 196 (2d Cir.2003) (plaintiff's failure to insist that a representation be included in a stock purchase agreement "precludes as a matter of law a finding of reasonable reliance"); *Feinman v. Schulman Berlin & Davis,* 677 F.Supp. 168, 170-71 (S.D.N.Y.1988) (Kram, J.) (dismissal appropriate where plaintiffs relied on statements "directly contradicted by the clear language of the offering memorandum"); *M.H. Segan Ltd. Partnership v. Hasbro, Inc.,* 924 F.Supp. 512, 527 (S.D.N.Y.1996) (Cote, J.) (party failed to establish reasonable reliance as a matter of law where misrepresentations were "directly contradicted" by written waiver agreement).

21   "Sophisticated business entities, when put on notice of the existence of material facts which have not been documented, assume the business risk that the facts may not be as represented because a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament." 247 F.Supp.2d 352, 369 (internal quotations omitted) *quoting Lazard Freres & Co. v. Protective Life Ins.,* 108 F.3d 1531, 1543 (2d Cir.1997).

22   "Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." *Grumman Allied Industries, Inc. v. Rohr Industries, Inc.* 748 F.2d 729, 737 (2d Cir.1984).

The court held previously that plaintiffs have successfully pleaded claims to meet the elements of an action for breach of contract. *Internet Law I,* 223 F. Supp at 490. The court now searches the record to see if there is sufficient evidence to prove these allegations. What is in dispute is whether Cootes Drive's breach, namely, selling shares short in violation of the agreement, was material.[23] If Cootes Drive's breach was material, plaintiffs argue, plaintiffs were excused from performance. As discussed above, Cootes Drive has proven its claim and the burden is upon plaintiffs to produce evidence that would "permit judgment for the [plaintiffs] on the basis of [their] defense."[24]

23   "Under New York law, for a breach of a contract to be material, it must go to the root of the agreement between the parties. A party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract." *Frank Felix Associates, Ltd. v. Austin Drugs, Inc.,* 111 F.3d 284, 289 (2d Cir.1997) (internal quotations and citations omitted); *Wechsler v. Hunt Health Systems, Ltd.,* 186 F.Supp.2d 402, 413 (S.D.N.Y.2002) ("Under New York law [materiality of a breach] is a question of law for the Court to decide.")

24   *Frankel v. ICD Holdings S.A.,* 930 F.Supp. 54 (S.D.N.Y.1996) (Kaplan, J.) (holding that custom crafted disclaimer language in notes negotiated between sophisticated parties waived a defense of fraud in the inducement)

**\*6** Plaintiffs make grand allegations but actually prove very little. Construing the facts in the light most favorable to them, but without taking any untoward leaps of faith, plaintiffs have shown that defendant Cootes Drive sold 64,346 shares "short"[25] prior to receiving a waiver[26] from INL that enabled them to sell shares in this manner. During the 93 trading days before the waiver, defendant Cootes Drive maintained short positions on only 7 days. Pls. Statement at ¶ 24. The shorted sales make up a very small minority of the shares traded by Cootes Drive and a minute percentage of the overall total shares traded during the period. The court finds that, in light of the peculiarities of this case, this small amount of trading is merely a technical violation of the agreement; it does not go to the root of the agreement between the parties and is therefore not is enough to constitute a material breach and excuse INL from performance.[27]

25   § 3.13 of the agreement defines short sales as a sale where there was not an equivalent offsetting long position including shares due under a notice of conversion.

26   Plaintiffs do not contest the authenticity of the waiver but allege the waiver was given as a result of the underlying fraudulent inducement. Holding, as we do, that plaintiffs' claims of fraudulent inducement are without merit, we find the parties validly entered into the waiver.

27   "The right of a party to enforce a contract will not be forfeited or lost by reason of technical, inadvertent, or unimportant omissions or defects." *Cablevision Systems Corp. v. Town of East Hampton,* 862 F.Supp. 875, 885 (E.D.N.Y.1994), *aff'd* 57 F.3d 1062 (2d Cir.1995) (unpublished table decision), *quoting Miller v. Benjamin,* 142 N.Y. 613, 617, 37 N.E. 631 (1894).

The one piece of evidence that plaintiffs produced which tends to mitigate in their favor are the trading records showing that Thomas Kernaghan, an agent and broker for Cootes Drive, was shorting INL stock. However, these

Case 9:15-cv-01443-TJM-TWD   Document 157   Filed 09/20/19   Page 20 of 28

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

trades begin well before the agreement and plaintiffs do not show that the trades were done at the behest of Cootes Drive. Plaintiffs have requested additional discovery to flesh out these particular weaknesses in their defense of breach. Plaintiffs have already been given ample time for discovery. In light of this and plaintiffs' conduct during such discovery, no additional discovery will be granted. [28]

[28]    See *Internet Law II,* 2003 WL 21537782 (S.D.N.Y.2003) (Carter, J.)

INL's defense of breach is hereby struck as it pertains to the third counterclaim. Plaintiffs have also included in their pleadings an everything-but-the-kitchen-sink list of affirmative defenses that they do not even attempt to support. [29] Like their affirmative defenses of fraud and breach, we find these defenses to be without merit as they pertain to Cootes Drive's Third Counterclaim. We hereby award summary judgment in favor of Cootes Drive on their Third Counterclaim. INL is required to pay damages and interest to Cootes Drive for breach of the agreement.

[29]    Reply to Counterclaims at 17-19.

    2. Counterclaim Four: The Promissory Note
Cootes Drive's fourth counterclaim for breach of contract is for failure to repay a promissory note. In New York, proof of a promissory note, demand and nonpayment establishes a prima facie case for recovery. [30] A prima facie case entitles the promisee to judgment as a matter of law. [31] In the instant matter, plaintiffs concede that "Cootes Drive agreed to loan INL $500,000 ... [as] memorialized by a promissory note dated December 5, 2000" (the "note"). Pls. Statement at ¶ 29-30. Plaintiffs further concede that Cootes Drive provided the funds; demanded payment on March 1, 2001; and that "[INL] has not paid the Note." *Id.* at 32-33. Based upon plaintiffs' admissions alone, Cootes Drive has squarely met the burden of proving a prima facie case.

[30]    See *First Federal Sav. Bank v. Tazzia,* 696 F.Supp. 904, 906 (S.D.N.Y.1988) (Sweet, J.); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Fremont,* 760 F.Supp. 334, 336 (S.D.N.Y.1991) (Stanton, J.); *Citicorp. Intern. Trading Co., Inc. v. Western Oil & Refining Co., Inc.,* 790 F.Supp 428 (S.D.N.Y.1992) (Sweet, J .).

[31]    *Gross v. Fruchter,* 230 A.D.2d 710, 711, 646 N.Y.S.2d 53, 54 (N.Y.A.D. 2 Dept.1996) (promisee established entitlement to judgment as a matter of law by producing note and demonstrating that maker failed to redeem when requested).

**\*7**    Once the promisee has demonstrated a prima facie case for recovery on a note, in order to avoid judgment, it is up to the maker to produce evidence showing a triable issue fact establishing a bona fide defense. *Grasso v. John I. Shutts Agency, Inc.,* 517 N.Y.S.2d 113, 132 A.D.2d 768 (N.Y.App.Div.1987). To this end, mere conclusory allegations will not suffice; a genuine and substantial issue rebutting holder's entitlement to payment must be shown. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Fremont,* 760 F.Supp. 334, 336 (S.D.N.Y.1991) (Stanton, J.). Without being explicit, plaintiffs seem to posit the same defenses to the payment of the note as the agreement, specifically that the note is a result of underlying fraud and that the defendants breached the note in some manner. Although, plaintiffs' fraud defense is invalid for the reasons described above, it is worth noting that it would not be applicable to the note because the plaintiff specifically waived his right to protest payment of the note. Note § 6 ("[a]ll payments of principal and interest shall be made without setoff, deduction or counterclaim.") Under New York law, such a waiver among sophisticated parties is effective to overcome virtually any defense to enforcement. [32]

[32]    *Citicorp. Intern. Trading Co., Inc.,* 790 F.Supp at 434; *Thornock v. Kinderhill Corp.,* 749 F.Supp. 513 (S.D.N.Y.1990) (Sweet, J.) (granting summary judgment in favor of promisee despite maker's defense of fraudulent inducement because such defense was not based upon misrepresentations concerning terms or conditions of loan itself); *Bank of Suffolk County v. Kite,* 49 N.Y.S.2d 827, 427 N.Y.S.2d 782 (1980) (Bank entitled to judgment on note despite alleged oral understanding that maker would not be liable where the unexpressed condition was inconsistent with the expressed terms of the note).

Plaintiffs offer no theories as to how Cootes Drive has breached the conditions of the note. Plaintiffs merely allege that after entering the agreement, their position with creditors had become so poor that they had no one else to turn to for money. Even assuming this is an attempt to contrive a non-frivolous economic duress defense, the court finds no merit in it. Plaintiffs were not "forced to agree to [the note] by means of a wrongful threat precluding the exercise of his free will." [33] INL's defenses to enforcement of the note fail. Summary judgment is awarded to Cootes Drive on their fourth counterclaim. INL must repay the principal and accrued interest on the note.

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

Case 9:15-cv-01443-TJM-TWD    Document 157    Filed 09/20/19    Page 21 of 28

33    *Signet Corp. v. Interbank Financial Services, Inc.,* 755 F.Supp. 103, 105 (S.D.N.Y.1991) (Eldelstein, J.) *quoting Austin Instrument, Inc. v. Loral Corp.,* 29 N.Y.2d 124, 130, 324 N.Y.S.2d 22, 25 (1971).

CONCLUSION

Plaintiffs' request for the court to reconsider the judgment entered July 8, 2005 is DENIED. Plaintiffs' motion to dismiss Cootes Drive's counterclaims is DENIED. Both of plaintiffs' motions to supplement the record are DENIED. Cootes Drive's motions to strike the Carr Affidavit and First Tate Affidavit are DENIED. The Citco defendants' motion to strike the Second Tate Affidavit is GRANTED. Partial summary judgment in favor of Cootes Drive on its third and fourth counterclaims is GRANTED.

IT IS SO ORDERED

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 3370542

---

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:15-cv-01443-TJM-TWD    Document 157    Filed 09/20/19    Page 22 of 28

Freeman v. Lundrigan, Not Reported in F.Supp. (1996)

1996 WL 481534

1996 WL 481534
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Millicient FREEMAN, Plaintiff,

v.

Kevin LUNDRIGAN, C.O., Defendant.

No. 96–CV–1190 (RSP/RWS).
|
Aug. 22, 1996.

**Attorneys and Law Firms**

Millicient Freeman, Oriskany, NY, Pro se.

McLane and Smith, L.L.P., Utica, NY (Steven A. Smith, of counsel), for Defendant.

ORDER

POOLER, District Judge.

**\*1** By Order dated February 5, 1996 ("Order"), I approved the Order and Report–Recommendation of Magistrate Judge Ralph W. Smith, Jr., dated October 5, 1995, and dismissed this action as against Daniel Middaugh, Michael Durant, Todd Egger, Robert Stanton and Daryl Bourant. *See* Dkt. No. 11.

A copy of the Order was served on Freeman at her last known address by regular mail on February 6, 1996. On February 12, 1996, the Order was returned to the Court marked "No Longer at This Facility—Please Return to Sender." *See* Dkt. No. 12.

On June 19, 1996, Steven A. Smith, Esq., attorney for the defendant, filed an affidavit with the Court stating that he had attempted to serve a first set of interrogatories on Freeman at the address listed on the summons, and that it was returned to him by the Post Office marked "RTS" or return to sender. *See* Dkt. No. 14.

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute an action or comply with any order of the court. *Link v. Wabash Railroad County Independent School District,* 370 U.S. 626 (1962). This power to dismiss an action may be exercised when necessary to achieve orderly and expeditious disposition of cases. *See*

*Rodriguez v. Walsh,* No. 92–Civ–3398, 1994 WL 9688, *1 (S.D.N.Y. Jan. 14, 1994) (citations omitted).

Additionally, this Court specifically cautioned Freeman that her failure "to promptly notify the Clerk's Office of any change in her address ... [would] result in the dismissal of the instant action." *See* Dkt. No. 3 at 7.

Moreover, a plaintiff has the duty to inform the Court of any address changes. As I have stated:

> It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be reflected by those inquiries if made in writing.

*Dansby v. Albany Cty Corr. Facility,* No. 95–CV–1525, 1996 WL 172699, *1 (N.D.N.Y. Apr. 10, 1996) (Pooler, J.) (quoting *Perkins v. King,* No. 84–3310, slip op. at 4 (5th Cir. May 19, 1985) (other citations omitted)); *see generally* Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York.

This matter cannot proceed without notification to the Court by Freeman of her current address. Therefore, it is hereby:

ORDERED, that this action is dismissed, *See* Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York, and it is further;

ORDERED, that the Clerk serve a copy of this Order on Freeman by regular mail at her last known address and on Steven A. Smith, Esq., attorney for the defendant.

1996 WL 481534

**\*2**  IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1996 WL 481534

---

**End of Document**                                   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 2205816
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Wattie FOLK, Plaintiff,

v.

P. RADEMACHER, et al., Defendants.

No. 00-CV-199S.

|

Sept. 9, 2005.

**Attorneys and Law Firms**

Wattie Folk, Great Meadow Corr. Facility, Comstock, NY, pro se.

William Lonergan, New York State Attorney General's Office, Stephen F. Gawlik, Assistant Attorney General, Buffalo, NY, for Defendants.

DECISION AND ORDER

SKRETNY, J.

I. INTRODUCTION

 *1  Plaintiff commenced this action under 42 U.S.C. § 1983 on March 3, 2000, by filing a Complaint in the United States District Court for the Western District of New York. Presently before this Court is a Motion to Dismiss filed by the remaining defendants in this case-P. Rademacher, Sgt. Stachewiez, Lt. Hendel, W.Kelley, Hartman, Fleming, Booker, Piasa and Sgt. Baker ("Defendants")-on September 2, 2004. Defendants bring their motion pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure. This is the third motion filed by Defendants on these grounds. For the reasons stated below, Defendants' motion is granted and this case is dismissed with prejudice.

II. BACKGROUND

This motion arises from a discovery ruling issued by the Honorable Hugh B. Scott, United States Magistrate Judge. On October 15, 2002, Defendants filed a Motion to Compel Plaintiff to respond to their First Set of Interrogatories because Plaintiff's initial response had been inadequate. On May 27, 2003, Judge Scott granted Defendants' Motion to Compel and directed Plaintiff to file appropriate interrogatory responses within twenty days. Despite being granted an extension of time in which to respond, Plaintiff failed to file his interrogatory response. As a result, on August 19, 2003, Defendants filed a Motion to Dismiss pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure.

On November 5, 2003, this Court denied Defendants' Motion to Dismiss after Plaintiff satisfactorily explained the reason he failed to comply with Judge Scott's Order. This Court granted Plaintiff an additional thirty days within which to file his response to Defendants' First Set of Interrogatories. Plaintiff filed and served his response to Defendants' First Set of Interrogatories on November 21, 2003. This response, however, was simply a photocopy of the response Plaintiff initially filed on August 29, 2002, the one Judge Scott found to be inadequate.

Consequently, Defendants filed a second Motion to Dismiss on December 19, 2003. Plaintiff filed a response in opposition. Therein, Plaintiff did not deny that he simply re-filed his initial interrogatory response. Rather, he argued that Judge Scott did not have dispositive jurisdiction, and therefore lacked the proper authority to find his initial interrogatory response inadequate. Further, Plaintiff argued that he did not fail to respond as Defendants alleged because he did indeed file a response.

On May 24, 2004, this Court denied Defendants' Second Motion to Dismiss. In doing so, however, this Court rejected Plaintiff's arguments and excuses for not complying with Judge Scott's Order. Nonetheless, because Plaintiff is proceeding *pro se,* this Court determined that granting the relief Defendants requested would be too drastic a measure at that stage of the litigation. See *Bobal v. Rensselaer Polytecnic Inst.,* 916 F.2d 759, 764 (2d Cir.1990) ( "dismissal with prejudice [under Rule 37] is a harsh remedy to be used only in extreme situations ..."). This Court warned Plaintiff that his lawsuit may be dismissed with prejudice if he did not file and serve appropriate responses to Defendants' First Set of Interrogatories within thirty days. Cf. *id.* at 764 (discussing that a court may dismiss an action brought by a *pro se* plaintiff if such plaintiff has been advised by the court that further non-compliance with a court order could result in dismissal of the case with prejudice).

2005 WL 2205816

**\*2** On June 17, 2004, Plaintiff filed a Motion to Extend the thirty-day response deadline. By Order filed July 7, 2004, this Court directed Defendants to provide Plaintiff with another copy of their First Set of Interrogatories, extended Plaintiff's deadline to respond to August 30, 2004, and warned Plaintiff that this was his final extension of time and that his failure to respond could result in his case being dismissed with prejudice. On August 13, 2004, Plaintiff filed his response to Defendants' First Set of Interrogatories.

On September 2, 2004, Defendants filed their instant Third Motion to Dismiss pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure. By Order filed October 7, 2004, this Court directed Plaintiff to file a response to Defendants' motion on or before October 29, 2004. On October 29, 2004, Plaintiff filed a Motion for Extension of Time to respond. By Order filed November 4, 2004, this Court extended Plaintiff's response deadline to November 29, 2004, and warned Plaintiff that his failure to file a response could lead to Defendants' motion being granted as uncontested. To date, Plaintiff has not filed a response to Defendants' motion.

### III. DISCUSSION

A. Dismissal under Rule 41(b) For Failure to Prosecute
This case first warrants dismissal based on Plaintiff's failure to prosecute, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, which provides that:

> [f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

FED. R. CIV. P. 41(b).

Rule 41(b) does not define what constitutes failure to prosecute. However, the Second Circuit has stated that failure to prosecute "can evidence itself either in an action lying dormant with no significant activity to move it or in a pattern of dilatory tactics." *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 42 (2d Cir.1982). Dismissal pursuant to Rule 41(b) falls within the court's discretion. *See id.* at 42-43 ("the scope of review of an order of dismissal is confined solely to whether the trial court has exercised its inherent power to manage its affairs within the permissible range of its discretion"). It is, however, "a harsh remedy to be utilized only in extreme situations." *Harding v. Fed. Reserve Bank,* 707 F.2d 46, 50 (2d Cir.1983) (quoting *Theilmann v. Rutland Hosp., Inc.,* 455 F.2d 853, 855 (2d Cir.1972) (per curiam); *see also Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664, 665 (2d Cir.1980) (discussing the sanction of dismissal for failure to prosecute as "pungent, rarely used, and conclusive"). This is particularly true in cases involving *pro se* litigants, where dismissal for failure to prosecute should only be granted "when the circumstances are sufficiently extreme." *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996) (citing *Nita v. Connecticut Dep't of Envtl. Prot.,* 16 F.3d 482, 487 (2d Cir.1994)).

**\*3** The following factors, none of which is dispositive, must be considered in determining whether dismissal for failure to prosecute is warranted: (1) the duration of the plaintiff's failures, (2) whether the plaintiff received notice that further delays would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) whether an appropriate balance has been struck between alleviating the court's calendar congestion and protecting the litigants' due process rights, and (5) whether lesser sanctions would be appropriate. *See United States ex rel. Drake v. Norden Sys., Inc.,* 375 F.3d 248, 255 (2d Cir.2004); *Nita,* 16 F.3d at 485; *Feurtado v. City of New York,* 225 F.R.D. 474, 477 (S.D.N.Y.2004) (quoting *Jackson v. City of New York,* 22 F.3d 71, 74 (2d Cir.1994)). In the present case, these factors weigh in favor of dismissal.

#### 1. Duration of Failures
The relevant inquiry on this factor is twofold: (1) whether the plaintiff is at fault for failing to prosecute, and (2) whether the plaintiff's failures were of significant duration. *See Norden Sys.,* 375 F.3d at 255.

In this case, Plaintiff has failed in two ways. First, as noted above, Plaintiff has failed to respond to Defendants' Third Motion to Dismiss, despite twice being directed by this Court

to do so. Second, and more significant, Plaintiff has failed to adequately comply with Judge Scott's discovery Order of May 27, 2003. Plaintiff has been afforded numerous opportunities to file an appropriate response to Defendants' First Set of Interrogatories. This Court alone has twice extended Plaintiff the benefit of the doubt by denying two Motions to Dismiss for Plaintiff's failure to engage in discovery. While Plaintiff did, in fact, file a response to Defendants' First Set of Interrogatories on August 13, 2004, his response is wholly inadequate. Plaintiff's response contains multiple objections to Defendants' basic interrogatory requests and does not provide anything by way of meaningful discovery. In fact, no useful information whatsoever is contained in Plaintiff's response. Clearly, Plaintiff alone is responsible for repeatedly filing inadequate responses to Defendants' discovery request. As a result, Defendants still have not received any meaningful response to their interrogatory requests.

With respect to the second inquiry, which concerns the duration of Plaintiff's failures, it has been almost one year that Plaintiff has failed to file a response to Defendants' Third Motion to Dismiss. The delay caused by Plaintiff's failure to response to Defendants' interrogatory request is even more significant. Defendants filed and served their First Set of Interrogatories on August 17, 2001. It has thus been more than *four years* and Plaintiff still has not filed an adequate response. This is a failure of significant duration. *Cf. Chira,* 634 F.2d at 666-67 (delay of six months sufficient to warrant dismissal for failure to prosecute); *Antonios A. Alevizopoulos & Assoc., Inc. v. Comcast Int'l Holdings, Inc.,* No. 99 Civ. 9311, 2000 WL 1677984, at *2 (S.D.N.Y. Nov.8, 2000) (delay of four months warranted dismissal). Thus, this Court finds that this factor weighs in favor of dismissal. In this Court's view, all delay in this case is attributable to Plaintiff and it is of significant duration.

### 2. Notice of Dismissal

**\*4** The Second Circuit requires that the plaintiff receive adequate notice that the case could be dismissed due to inaction. *See Martens v. Thomann,* 273 F.3d 159, 180-81 (2d Cir.2001). In the present case, Plaintiff had adequate notice. First, both the initial Scheduling Order on Defendants' Third Motion to Dismiss and the Order granting Plaintiff's request for an extension of time warned Plaintiff that his failure to file a response as directed could lead to Defendants' motion being granted as uncontested. Second, this Court's Decision and Order denying Defendants' First Motion to Dismiss explicitly stated that Defendants were free to seek dismissal of Plaintiff's Complaint if he failed to respond to the

First Set of Interrogatories as directed. Moreover, this Court's Decision and Order denying Defendants' Second Motion to Dismiss warned Plaintiff that his failure to file appropriate responses to Defendants' First Set of Interrogatories could result in this action being dismissed with prejudice. Because Plaintiff was repeatedly put on notice that his case could be dismissed due to his continued inaction, this factor strongly weighs in favor of dismissal. *See Lyell Theatre,* 682 F.2d at 42-43 (Rule 41(b) dismissal upheld where plaintiff was warned by opposing counsel and the court that dismissal for failure to prosecute was possible).

### 3. Prejudice to Defendants

The third factor requires an inquiry into whether the defendant has been prejudiced by the plaintiff's inaction. "Prejudice to defendants resulting from unreasonable delay may be presumed, but in cases where delay is more moderate or excusable, the need to show actual prejudice is proportionately greater." *Lyell Theatre,* 682 F.2d at 43 (citations omitted). In *Lyell Theatre,* the court presumed prejudice where the plaintiff on numerous occasions failed to file documents as directed by the court. *Id.* at 39-40, 43. Similar to the present case, the plaintiff in *Lyell Theatre* continued to ignore the court's orders even after he had been warned that he was risking dismissal. *Id.* at 39. Under *Lyell Theatre,* the prejudice to Defendants in this case may be presumed. Thus, this factor weighs in favor of dismissal.

### 4. Balance between Calendar Congestion and Due Process Rights

The fourth factor requires the court to consider the balance between calendar congestion and the plaintiff's right to present his or her case. *See Norden Sys.,* 375 F.3d at 257. In this regard, " ' 'a court must not let its zeal for a tidy calendar overcome its duty to justice.' ' " *Feurtado,* 225 F.R.D. at 480 (quoting *Davis v. United Fruit Co.,* 402 F.2d 328, 331 (2d Cir.1968)). Plaintiff's failure to comply with Judge Scott's discovery order has resulted in this Court having to prepare and file numerous scheduling orders, as well as decide three separate motions to dismiss. While this has been a needless expenditure of judicial resources, this Court cannot conclude that the overall effect on docket congestion has been significant.

**\*5** This Court notes, however, that Plaintiff has been afforded Due Process rights in that he has been provided numerous opportunities to comply with the Orders of this Court. Thus, Plaintiff's own failure to litigate this matter is

not a denial of Due Process. *See Dodson v. Runyon,* 957 F.Supp. 465, 470 (S.D.N.Y.1997) ("any claim that plaintiff's due process rights were violated thus cannot prevail because the delay and resultant dismissal of plaintiff's case are of his own making"); *cf. Feurtado,* 225 F.R.D. at 480 (repeated failure to comply with court orders diminishes a plaintiff's right to present his claims). Accordingly, this factor also weighs in favor of dismissal.

5. Consideration of Lesser Sanctions

Finally, the Second Circuit requires district courts to consider whether lesser sanctions would sufficiently remedy any prejudice resulting from the plaintiff's inaction. *See Norden Sys.,* 375 F.3d at 257. Upon reviewing the entire record in this case, it is the opinion of this Court that Plaintiff has no intention of complying with this Court's Orders or properly litigating this case. Plaintiff has repeatedly ignored court orders by failing to file a response to Defendants' Third Motion to Dismiss and to Defendants' First Set of Interrogatories. Given the procedural history of this case, this Court finds that any sanction short of dismissal would be ineffective. *See Smith v. Human Res. Admin. of New York City,* 2000 WL 307367, at *3 (S.D.N.Y. Mar.24, 2000) (finding lesser sanctions inappropriate where past court orders did not motivate the plaintiff to move the case forward); *Alevizopoulos,* 2000 WL 1677984, at 4 (finding lesser sanctions inappropriate based on repeated failures to comply with court orders). Thus, this final factor also weighs in favor of dismissal.

Accordingly, this Court finds that dismissal of this case is warranted under Rule 41(b) for Plaintiff's failure to prosecute.

B. Dismissal under Rule 37(b) For Failure to Comply with Discovery Orders

"A district court may impose sanctions when 'a party ... fails to obey an order to provide or permit discovery.' " *Burns v. Imagine Films Entm't, Inc.,* 164 F.R.D. 594, 598 (W.D.N.Y.1996) (quoting FED. R. CIV. P. 37(b)). Rule 37 of the Federal Rules of Civil Procedure, which concerns the discovery obligations of civil litigants, vests district courts with "broad power" and discretion to impose sanctions, including dismissal, on parties who fail to adhere to discovery orders. *See Friends of Animals, Inc. v. United States Surgical Corp.,* 131 F.3d 332, 334 (2d Cir.1997) (per curiam); *see also Jones v. J.C. Penney's Dep't Stores, Inc.,* 228 F.R.D. 190, 195 (W.D.N.Y.2005) (identifying dismissal of the action as an available sanction under Rule 37); *JSC Foreign Econ.*

*Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.,* No. 03 Civ. 5562, 2005 WL 1958361, at *9 (S.D.N.Y. Aug. 16, 2005).

***6** While Rule 37 dismissal is a drastic remedy to be reserved only for extreme circumstances, it "is warranted ... where a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault." *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.,* 845 F.2d 1172, 1176 (2d Cir.1988) (and cases cited therein); *see also Societe Int'l v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) (sanctions under Rule 37 justified where responding party has control over information requested and fails or refuses production without showing of inability to comply with court's order). Moreover, "dismissal with prejudice may be imposed even against a plaintiff who is proceeding pro se, so long as a warning has been given that noncompliance can result in dismissal." *Valentine v. Museum of Modern Art,* 29 F.3d 47, 50 (2d Cir.1994) (per curiam).

For all of the reasons discussed above, this Court finds that dismissal of this case is also proper under Rule 37(b) for Plaintiff's failure to comply with discovery orders.

IV. CONCLUSION

Mindful of the fact that *pro se* cases should not easily be dismissed for procedural deficiencies, this Court concludes that Plaintiff's failures in this case go beyond procedural deficiencies, and constitute actual neglect. Plaintiff has failed to diligently prosecute this action in any manner, and has failed to comply with orders of this Court. As such, because each of the factors relevant to the Rule 41(b) and Rule 37(b) analysis favor dismissal, this Court will dismiss this case with prejudice.

V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Third Motion to Dismiss (Docket No. 145) is GRANTED.

FURTHER, that this case is dismissed with prejudice pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure.

FURTHER, that the Clerk of the Court is directed to close this case.

2005 WL 2205816

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 2205816

---

                     © 2019 Thomson Reuters. No claim to original U.S. Government Works.

---

**WESTLAW**   © 2019 Thomson Reuters. No claim to original U.S. Government Works.   5